COMMERCE TRUST COMPANY, a corporation, Herbert S. Shue and S. Harvey Laner, Plaintiff-Respondents,

v.

Helen A. STARLING et al., Defendant-Respondents,

and

Anna Neevel, Esther Spector, Sadie Kadner, Charles S. Allis, Harold Neevel, Harriet Spector Scrinopskie, Marjorie Kadner Orleans Samuels, Mickey Kadner, Arthur Bruce Allis and Larry Allis, a minor, by his Guardian Ad Litem, Charles S. Allis, Defendant-Appellants.

No. 51133.

Supreme Court of Missouri,

Division No. 2.

Sept. 13, 1965.

John B. Gage, William H. Leedy, Marvin E. Hankin, Gage, Hodges, Park & Kreamer, Kansas City, for respondents.

Harry L. Browne, Howard F. Sachs, Spencer, Fane, Britt & Browne, Kansas City, for respondent Jewish Memorial Hospital Ass'n of Kansas City.

Arnold N. Shanberg, Rope, Shanberg, Rope & Gibson, Kansas City, for respondent Beth Shalom Congregation.

George L. Gordon, Lathrop, Righter, Gordon & Parker, Kansas City, for respondent Children's Mercy Hospital.

James H. Coonce, Mann, Coonce & Sullivan, Kansas City, for respondent Baptist Memorial Hospital, Inc.

Thomas M. Sullivan, Downey, Sullivan & McCormick, Kansas City, for respondent Rockhurst College.

Horace Warren Kimbrell, Kansas City, for respondent University of Kansas City.

Paul Van Osdol, Jr., Terrell, Van Osdol & Magruder, Kansas City, for respondent Midwest Research Institute.

Harry L. Jacobs, and Francis M. Hanna, Kansas City, for Dorothy A. Kovitz, Susan Allis Kovitz and Dorothy A. Kovitz, guardian ad litem for Louis Kovitz, Jr., respondents.

Robert J. Coleman, Kansas City, pro se.

Joseph A. Hoskins, Roger T. Hurwitz, Walter J. Kennedy, Hoskins, King, Springer & McGannon, Kansas City, for appellants.

STOCKARD, Commissioner.

The principal issues on this appeal are (1) whether the grantor of an inter vivos trust provided that after his death certain non-charity distributees should receive the benefits payable to them from the trust free from all inheritance and estate taxes, and if not, (2) whether the method of allocating the taxes proposed by the trustees is proper. In addition, appellants present a question concerning the allowance of attorney fees.

On September 14, 1961, Barney L. Allis, as grantor, executed an inter vivos trust agreement with Commerce Trust Company, Herbert S. Shue and S. Harvey Laner as trustees. Mr. Allis died on April 17, 1962, leaving a will, and Commerce Trust Company is executor of the will. The total inventory and appraisement of the probate estate, exclusive of the assets of the trust, was $176,979. (All dollar amounts used herein omit cents). The total value, subject to possible adjustments, of the assets held by the trustees on April 17, 1962, was $12,285,871, and these funds were taxable in the decedent estate because the grantor had retained a life income and the right to revoke the trust. In addition to the property in the trust and in the probate estate, there was other property included in the gross estate for tax purposes, and other items, not included at the time of trial of this case, may be required to be included. The gross estate for federal estate tax purposes reflected by the return (but with possible adjustments which would also result in adjustment of the amount of taxes) was $12,533,028. Expenses, debts, the marital deduction, and the statutory exemption resulted in a taxable estate of $9,847,631. The net federal estate tax was computed to be $4,918,840, which has been paid out of funds of the trust. The estimated Missouri inheritance tax with respect to all gifts made by the grantor is $255,836 and the estimated Missouri estate tax is $797,724. These Missouri taxes have not been paid, but a reserve for this purpose has been set aside. Thus the total of all death and succession taxes, federal and Missouri, is estimated to be $5,972,400. The trustees contend, and the trial court held, that a portion of these taxes is to be borne by appellants and the other donees under Article V of the trust agreement whose gifts are not deductible as charitable gifts in computing estate taxes and which are not exempt under the Missouri inheritance tax law. Appellants contend that

their particular gifts are to be distributed to them without reduction for any death or succession taxes. The amount in dispute is in excess of $275,000, and jurisdiction of this appeal is in this court.

We shall set forth in summary form, when that method is sufficient, and in detail, when appropriate, the material provisions of the trust agreement.

Article I. The grantor provided for the payment to him of the income from the trust during the remainder of his life, with the right of the trustees to encroach on the principal when necessary for his care and the care and support of his wife.

Article II. Upon the death of the grantor the trustees were to pay to Irene Allis, his wife, "if and only if" she survived the grantor, the sum of $100,000, without any "deduction from the amount so payable to grantor's wife on account of any of such estate, inheritance, transfer or succession taxes." (This provision was made, apparently, pursuant to an ante-nuptial agreement wherein grantor agreed, among other things, to leave his wife the sum of $100,000 without any tax burden).

Article III, Par. A. The grantor created what is referred to as the "Irene Trust." It provided that "if and only if" Irene Allis survived the grantor and she and the grantor should be married and living together at the time of his death, the trustees should set aside a "trust share" for her benefit consisting of money or property equal in value in the opinion of the trustees to thirty-five per cent of the net trust estate plus one hundred thousand dollars in addition to the gift in Article II.

Par. B. defined for the purposes of Article III what would constitute the "net Trust Estate."

Par. C. "Pending the time that the Trustees shall finally determine the amount of the net Trust Estate of the Grantor, as provided in Paragraph B above, they shall be fully authorized, if they see fit, to approximate the same in good faith for the purposes of the Trust Agreement, and pursuant to such approximation, to set up, handle and administer under the provisions hereof a tentative Irene Trust and the other Trust Parts or Trust Shares to be set up and established hereunder; provided, however, that the corpus and income thereof shall be subject to adjustment and adjusted upon the final determination of the amount and valuation of the net Trust Estate by the Trustees. *The trustees shall also charge against and then deduct from the amounts payable to beneficiaries under this Trust and from the amounts set aside into the separate trusts to be established the amount of Federal Estate, inheritance or succession taxes, proportionately attributable to such payments or allocations and such deductions shall be subject to adjustment upon the final determination of the amount of such taxes.*" (Italics added.)

Par. G provides that should Irene Allis predecease the grantor, which she did not do, or in the event that she and the grantor were not at the time of his death married and living together, a condition which did not occur, then Article III, except paragraph I thereof, "shall be of no force and effect as if this Article had never been contained herein." Paragraph I was a "no contest" provision which is immaterial to this appeal.

Article V consists of sixteen paragraphs in which the grantor directed that within five years after his death the trustees should distribute to the persons and institutions therein named the stated sums. The appellants in this case are three sisters and one brother of the grantor and the children of each who were designated in Article V as distributees. The gift to each sister and brother was $20,000. In addition, the brother, Charles S. Allis, was given 3,000 shares of the capital stock of Trianon Hotel Company, subject to certain conditions, or the value thereof if the stock was sold by the trustees. (At the time of the death of the grantor the Trianon Hotel Company had sold its physical properties and was in the process of liquidation. The

trustees estimated the value of the 3,000 shares for tax purposes at $206,298). Gifts to the named nephews and neices of grantor who are appellants were in the amount of $10,000 each. Other gifts were made to individuals who are not appellants, and to organizations who qualify as eleemosynary or charitable institutions. The total of the non-charity gifts was $456,298 and the total of the charity gifts was $115,000.

Article VI. "After the death of the Grantor, and not later than thirty days subsequent to the final determination of the amount of all estate, inheritance, transfer or succession taxes assessed against Grantor's estate or payable by the Trustees out of the Trust Estate, the remainder of the Trust Estate subject, however, to the payment of such costs, expenses, taxes, either of the Trust or Grantor's Estate as are authorized hereunder, after first paying or setting apart such sums, if any, as may be required in their judgment pursuant to the provisions of Articles II, III, IV and V hereof, shall be divided into two shares— one share to consist of one-half of said Remainder of the Trust Estate (hereinafter called the Helen Trust) for the benefit of Grantor's daughter, Helen A. Starling and Grantor's grandchildren hereinafter named, and one share to consist of the remaining one-half of the Trust Estate (hereinafter called the Dorothy Trust), for the benefit of Grantor's daughter Dorothy A. Kovitz and Grantor's said grandchildren."

Article VIII consists of six subparagraphs, none of which is material to this appeal except a portion of subparagraph E as follows: "Subject to the provisions of Article IX [pertaining to acts of the trustees to be done at the direction of the grantor during his lifetime] and X hereof [pertaining to selection of new trustees in the event of disability or refusal of a trustee to serve, and also providing for removal of trustees], the Trustees from time to time acting hereunder are expressly authorized and empowered * * * (13) to make advancements or payments to the Executor or to the representative of the Estate of the Grantor, after his death, in case such Executor or other representative is in need of cash with which to pay any or all taxes and any and all claims or other indebtedness or expense of such Estate, and to make such advancements with or without interest and with or without obligation for repayment; * * *."

Article XIV. "Upon the written request of the Executors, Administrators, or other personal representative of the Grantor, *the Trustees shall pay out of the corpus of the Trust Estate, without right to seek recoupment or contribution from [sic] any other source, any and all inheritance, estate, succession and tranfer taxes assessed against the property declared or adjudged to be a part of the Grantor's taxable estate,* including not only the Trust Estate but any other estate or property owned and held by the Grantor at the time of his death *or against any beneficiary of the Grantor who shall receive any property under the terms of this instrument or under his Last Will and Testament or otherwise.*" (Italics added.)

Mr. Allis executed his will on the same day that he executed the trust agreement. He bequeathed $100 to each of his two daughters and certain real estate and personal property to his widow. The remainder of his estate was bequeathed to the trustees named in the trust agreement to become part of the assets of the trust.

This case originated when the trustees filed suit requesting a construction of five separate articles of the trust agreement. Appellants do not contend that the trial court erred in its construction of the trust agreement except as to the placement of the ultimate burden of estate and inheritance taxes and as to the method of allocating the proportionate share of the taxes if they should bear any of the ultimate burden of the taxes. Appellants rely principally upon the italicized language of Article XIV of the trust agreement in support of their contention that the particular gifts

to them and the other non-charity distributees mentioned in Article V should be distributed without reduction for any death or succession taxes. The trustees rely principally upon the italicized language of Article III, and it is their position, and it was the ruling of the trial court, that the distributions to the non-charity beneficiaries named in Article V are subject to and there shall be attributed thereto and deducted proportionally therefrom federal and Missouri estate and Missouri inheritance taxes. The following is a summary of the amounts which would be received by the specific donees and by the Irene, Helen and Dorothy trusts under the opposing theories. Column I represents the construction of the trust agreement by the trustees; Column II represents appellants' construction; and Column III represents the differences between the two in dollars amounts.

|  | I | II | III |
|---|---|---|---|
| Art. II gift to Irene | $ 100,000 | $ 100,000 | $ –0– |
| Irene Trust | $2,136,479 | $2,004,817 | (131,662) |
| Art. V non-charity distributees | $ 179,803 | $ 456,298 | $276,495 |
| Art. V charity distributees | $ 115,000 | $ 115,000 | $ –0– |
| Helen Trust | $1,841,016 | $1,718,759 | (122,257) |
| Dorothy Trust | $1,841,016 | $1,718,759 | (122,257) |

The parties are in agreement that the testator, in the case of a will, or the grantor, in the case of an inter vivos trust constituting a part of the taxable estate, may designate who or what fund should bear the ultimate burden of these taxes. See Priedeman v. Jamison, 356 Mo. 627, 202 S.W.2d 900, and the cases cited in 142 A.L.R. 1135. They also are in agreement that in this case the grantor has attempted to do so. If we are able to determine the intent of the grantor in this respect, the doctrine of equitable apportionment enunciated in Hammond v. Wheeler, Mo., 347 S.W.2d 884, and in Jones v. Jones, Mo., 376 S.W.2d 210, has no application. See St. Louis Union Trust Company v. Krueger, Mo., 377 S.W.2d 303, 306. In our determination of the grantor's intent we are to give the words used their usual, ordinary and natural meaning in the absence of anything in the instrument to deflect from that meaning, 90 C.J.S. Trusts § 161 h(1), p. 24, but the instruments must be construed to avoid, if possible, repugnancy in the various provisions, and, as it has been tritely said, the provisions must be construed in the light of the entire instrument considered from its four corners. Old Folks Home of St. Louis County v. Saint Louis Union Trust Company, Mo., 313 S.W.2d 671; Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21; Eckle v. Ryland, 256 Mo. 424, 165 S.W. 1035. If possible, effect should be given to all of the language used, Coleman v. Haworth, 320 Mo. 852, 8 S.W.2d 931; Boland v. Mercantile-Commerce Bank & Trust Co., 349 Mo. 731, 163 S.W.2d 597, and when, as here, a trust agreement and a will form parts of the same plan, the documents must be construed together.

When we construe the language of the trust agreement and the will according to the above rules, and in the light of the attending circumstances, we conclude that the grantor has provided (1) that taxes generated by or resulting from (a) the presence in the taxable estate of property or money not assets of the trust or probate estates, and (b) the transfer of such property or money, should be paid from the corpus of the trust, without right of the trustees to seek recoupment or contribution from any other source; (2) that federal

estate and Missouri inheritance taxes generated by or resulting from (a) the presence in the taxable estate of property or money constituting assets of the trust or probate estate, and (b) the transfer of such property or money, should be paid from the corpus of the trust and the trustees shall then charge against and deduct from the amounts payable to non-charity beneficiaries under Article V and the amounts includable in the Helen and Dorothy trusts the amounts of such taxes "proportionately attributable" thereto; and (3) the Missouri estate tax should be paid out of the corpus of the trust without the right of the trustees to seek recoupment or contribution from any other source. We shall now set forth the reasons for the above conclusions.

■■■ The grantor executed the trust agreement and his will on the same day. He transferred to the trustees property with a value in excess of $12,000,000. This left him with other assets, which at the time of his death seven months later, was less than $200,000. After the execution of the trust agreement and before his death, the grantor conveyed away or disposed of some of his other assets, but even so the terms of the trust agreement demonstrate that he knew (and in the absence of actual knowledge we would presume that he knew) that his trust estate would be included in his "gross estate" for tax purposes, and that his probate estate would constitute only a fraction of the total death and succession taxes. The federal estate tax is a lien against the "gross estate," and it is contemplated that it shall be paid, in the first instance, by the executor of the decedent's estate, although if not paid by him collection can be had by proceeding directly against the gross estate. In view of this, and the size of the probate estate as compared to the trust estate, the grantor made provision in Article VIII, paragraph E(13) that the trustees were "expressly authorized and empowered" to make payments "to the Executor or to the representative of the [probate] Estate of the Grantor," if needed, "to pay any or all taxes and any and all claims or other indebtedness or expense of such Estate," and he also directed by Article XIV that upon written request of the executor or representative of his probate estate the trustees should pay directly without the right to seek recoupment or contribution from any other source, all inheritance, estate, succession and transfer taxes assessed (1) against the property declared or adjudged to be a part of the grantor's taxable estate, or (2) against any beneficiary of the grantor who shall receive any property under the terms of the trust instrument or under his will "or otherwise." In this manner the grantor made provision for the bulk of his assets, those of the trust estate, to be available for the payment of estate and inheritance taxes without the need of the taxing authorities to proceed directly against the trustees, against the beneficiaries under the trust or will, or against those who prior to his death received property or money as a gift or otherwise which, by reason of the nature of the gift or the time of making it, had to be included as a part of his taxable estate. The duty in the first instance of the executor of the decedent's estate to pay the death and succession taxes, and the liability of a fund or of beneficiaries to bear the ultimate burden of those taxes, and in what proportion, are based on different principles, and are not to be confused. In view of the circumstances of the death and succession taxes being far in excess of the property in the hands of the executor of the probate estate, who had the duty in the first instance to pay or collect and transmit the taxes, we consider the above provisions of Articles VIII and XIV to constitute a direction by the grantor to the trustees to pay or to make available money to pay the death and succession taxes, and when paid at the written request of the executor or representative of his probate estate, the trustees were not to attempt to recoup from other sources the taxes so paid. These articles do not pertain to who or what funds shall bear the

ultimate burden of the death and succession taxes.

Having arrived at the conclusion that Articles VIII and XIV provide the source and method for the original payment of taxes, we turn now to the question of whether the grantor has exercised his right to designate who or what fund should bear the ultimate burden of the death and succession of taxes.

■ The scheme or plan for the distribution of the property and money constituting the assets of the trust estate, was, first, to give Irene Allis the amount she should receive pursuant to the antenuptial agreement free from the burden of all taxes; second, to make certain specific gifts to named individuals and charitable organizations; and third, to create three trusts which we shall refer to, as did the grantor, as "trust shares" or as the Irene, Helen and Dorothy trusts in order to distinguish them from the main trust. The first trust share, or the Irene trust, is created by Article III, and the amount of its assets depends, in part, on the amount of the estate and inheritance taxes. The other two trust shares, the Helen and Dorothy trusts, are created by Article VI out of the residue of the assets of the main trust estate, and they also depend, in part, on the amount of taxes. The assets of each of these three trust shares are not subject to ready determination, so by paragraph C of Article III the grantor authorized the trustees to set up "a tentative Irene Trust and the other Trust Parts or Trust Shares to be set up and established hereunder." Although this authority for setting up tentative trust shares is contained in paragraph C of Article III, which article pertains primarily to the Irene trust, there can be no question but that the authority extended to and included the Helen and Dorothy trusts. In Article VII reference is made to "the establishment of said Helen Trust and Dorothy Trust or Trust Shares tentatively or permanently by the Trustees." This neces-

sarily referred to the authority in Article III for tentative trusts; there being no other. Following then, in a separate sentence in paragraph C of Article III, it is provided that "The Trustees shall also charge against and then deduct from the amounts payable to beneficiaries under *this Trust* and from the amounts set aside into *the separate trusts to be established* the amount of Federal Estate, inheritance or succession taxes, proportionately attributable to such payments or allocations and such deductions shall be subject to adjustment upon the final determination of the amount of such taxes." (Italics added.)

The trustees took the position, and the trial court held, that by reason of this provision they are required to charge against and then deduct from the amounts payable to non-charity beneficiaries under Article V, and from the amounts set aside in the Helen and Dorothy trusts "the amount of federal and state, estate and inheritance taxes proportionately attributable to such distributions or allocations." The Irene trust is not included upon the theory that the total amount payable to Irene or to be placed in trust for her qualifies for the federal estate tax marital deduction and for the exemption provided for by Section 145.090 RSMo 1959, V.A.M.S. Amounts payable to charitable institutions are not included because the presence in the taxable estate of the money to pay them generates or results in no federal estate tax, and they are exempt under Section 145.090, supra, pertaining to the Missouri inheritance tax.

We agree with the trial court concerning the meaning and application of paragraph C of Article III except as to the Missouri estate tax, and we shall set forth, first, our reasons for excluding the Missouri estate tax, and second, our reasons for otherwise agreeing with the trial court together with our comments on the contentions of appellants.

■ Paragraph C of Article III refers only to "the amount of Federal Estate,

inheritance or succession taxes." The Missouri estate tax, or "additional tax" imposed by Section 145.070 is none of these. It is a Missouri estate tax. Brown v. State, 323 Mo. 138, 19 S.W.2d 12, 17. It is not an inheritance or succession tax, in the commonly understood meaning of those terms. 28 Am.Jur. Inheritance, Estate, and Gift Taxes §§ 3, 5, 6 and 8. The fact that the grantor intentionally did not include the Missouri estate tax in paragraph C of Article III, and its exclusion was not an oversight, is obvious for two reasons. First. In the trust agreement the grantor referred to taxes in six places. In Article II he referred to "such estate, inheritance, transfer or succession taxes." In Article III, paragraph B and in Article VI he referred to "all estate, inheritance, transfer or succession taxes." In Article VIII, paragraph E(13) the reference was to "any and all taxes." In Article XIV the reference was to "all inheritance, estate, succession and transfer taxes." In this manner, in five separate places, the grantor demonstrated that when he wanted to include the Missouri estate tax he knew how to do so. Yet in paragraph C of Article III he referred to "Federal Estate, inheritance or succession taxes." Second. The reference in paragraph C of Article III is for the purpose of directing the trustees to deduct from and charge against amounts payable under the trust the amount of designated taxes "proportionately attributable" to such payments. The Missouri estate tax is "equal to the difference between the total tax imposed under said section 145.060 [the inheritance tax], including all other state inheritance and estate taxes, and the credit for estate, inheritance, legacy and succession taxes allowable to the estate of such decedent against the United State federal estate tax." Section 145.070 RSMo 1959, V.A. M.S. How the amount of such tax "proportionately attributable" to the amounts payable to beneficiaries under the main trust and to be set aside into trust shares could be determined defies imagination. It is therefore readily understandable why the grantor would intentionally exclude it from the taxes referred to in paragraph C of Article III.

■ We note at this point that neither the appellants nor any of the other parties make the specific contention that if paragraph C of Article III requires that the taxes there designated should be proportionately attributable to the bequests which generated, resulted in, or contributed to those taxes, that the Missouri estate tax was not included. However we cannot rule the contention made by appellants without meeting this issue, and we are not willing to close our eyes to what we consider to be such an obvious result from the construction of the trust agreement required by the issues which are presented.

We shall now comment on the arguments presented by appellants as to why paragraph C of Article III does not provide that the amounts payable to them should be charged with any of the taxes designated therein. They contend that the words "this Trust" in paragraph C refer only to the Irene trust, and that this sentence does not apply to the non-charitable gifts made in Article V. We do not agree. First, the two words cannot be isolated, but must be treated in context, and when this is done the grantor directed that charges be made against the amounts payable to the beneficiaries under "this Trust," that is, the main trust, *"and* from the amounts set aside into the separate trusts to be established." If the grantor had intended this sentence to apply only to beneficiaries under the Irene trust he would have said so, and he would have then referred to the Helen and Dorothy trusts by name and not "the separate trusts." In addition, he used the word "beneficiaries" in the plural, but there is only one beneficiary of the Irene trust, namely, Irene Allis, his widow. It is true that if Irene did not survive the grantor, the Irene trust was not to be created, and instead a trust share in the amount of $50,000, called the "Douglas Trust" was to be created for the benefit of William

Douglas Sellers, a son of Irene. But as used the words "this Trust" could not refer to the Douglas trust, and Sellers was not a beneficiary of the Irene trust. He acquired no interest whatever in it, and the Douglas trust never came into existence.

Appellants also assert, in effect, that paragraph C of Article III is not the logical place for a provision designating who shall bear the ultimate burden of taxes. However, when considered in relation to the other provisions there is a good reason for placing it there. Paragraph D authorizes immediate payments of income and corpus to Irene from the tentative Irene trust, and Article VII authorizes immediate payment of income from the Helen and Dorothy trusts to Helen and Dorothy and their children. Therefore, in the provision authorizing the tentative trusts it was logical and proper that the grantor would there place the provision substantially affecting the size of the trusts by charging against them the taxes proportionately attributable to them.

Appellants also assert that the provision in paragraph C could refer only to the Irene trust because if Irene predeceased the grantor the entire Article III, except paragraph I, became void and of no effect. This argument is not persuasive. First, Irene did not predecease the grantor, and we must construe the operative provisions of the trust agreement which includes Article III. Second, it could very well have been the intention of the grantor not to require Article V non-charity distributees to share in the burden of taxes in the event his wife predeceased him because, other than the Douglas trust which then would have been created, the gifts to her would have gone into the Helen and Dorothy trusts created from the residue of the trust assets. In such event, the taxes would have been paid as directed by Article XIV, without the right of the trustees to seek recoupment or contribution from any other source, and the burden of taxes would have been shifted to the Helen and Dorothy trusts which would have been substantially increased. At least such reasoning on the part of the grantor would not have been illogical and without justification.

Appellants next argue that if the language of Article XIV be construed "as merely a direction to the trustees to pay taxes in the first instance out of trust corpus, and then [pursuant to paragraph C of Article III] to deduct the taxes before transferring the Article V gifts, or to collect the taxes from the Article V non-charity distributees, then this is no more than what the law would require absent a contrary direction by the grantor, and the language * * * would serve no purpose." This argument also is not persuasive. First, absent the provisions of paragraph C of Article III this is not "what the law would require." Appellants assume there would be equitable apportionment, but Article XIV requires that the trustees pay the taxes out of the corpus of the trust estate, without the right to seek recoupment or contribution from any other source. Second, if it would be what the law otherwise would require, it is of no significance. We know that testators usually provide in their wills for the payment of debts and funeral expenses, and that most certainly is an unnecessary provision. However, it does not thereby take on a meaning different from the ordinary and usual meaning of the words used. Also, in making this argument appellants rely on their interpretation of Article XIV to the effect that the grantor directed the trustees not to "seek recoupment or contribution" for the taxes so paid "against any beneficiary of the Grantor who shall receive any property under the terms of this instrument or under his Last Will and Testament or otherwise." We disagree with that interpretation, and previously, when we set out the substance of Article XIV we inserted the figures 1 and 2 in order to demonstrate that reference was had to taxes "assessed [1] against the property * * * or [2] against any

beneficiary of the Grantor who shall receive any property under the terms of this instrument or under his Last Will and Testament or otherwise."

A restatement of our construction of the trust agreement is that Article XIV, when read and harmonized with the provisions of paragraph C of Article III, constitutes authority for and a direction to the trustees to pay in the first instance "all inheritance, estate, succession and transfer taxes" assessed against the taxable estate when requested in writing by the executor, without seeking recoupment or contribution from any other source, a general provision, which gives way to the specific provision in paragraph C of Article III that as to such taxes, except the Missouri estate tax, the trustees should charge against and deduct from amounts payable to beneficiaries under the main trust, including the trust shares, the amount of such taxes "proportionately attributable" to such payments or allocations. Under this construction the provisions of paragraph C of Article III and Article XIV are not repugnant, and they are all given effect and meaning. We reject the contention of appellants that they should receive the amounts named in Article V as payable to them without reduction for federal estate or state inheritance taxes.

■ This brings us to the alternative contention of appellants presented in their second point. They contend that if Articles III and XIV are construed adversely to their position, which we have done as to federal estate and Missouri inheritance taxes, then the trial court erred in holding that the amount of federal estates taxes "proportionately attributable" to the Article V non-charity distributees should be computed as proposed by the trustees. No contention is made that the formula used for Missouri inheritance taxes is erroneous. The formula approved by the trial court was to divide the federal estate tax ($4,918,840) by the net taxable estate ($9,847,631) plus the $60,000 exemption, and

then apply such resulting fraction or percentage (.496469817) to each payment or allocation to which the tax is attributable. The figure thus obtained constitutes the amount of federal estate tax proportionately attributable to such payment or allocation.

Appellants argue that the grantor did not intend this "harsh and confiscatory formula," and that it does not give a "fair and reasonable" meaning to the words "proportionately attributable." They point out that federal estate tax rates are based on a progressive or graduated scale; that once the grantor's net trust estate exceeds the amounts of the specific gifts made in Article V, those distributees do not participate in the trust estate, but the larger the trust estate in excess of the sum of the Article V gifts, then the larger is the amounts to be received by the Irene, Helen and Dorothy trusts; and that the formula used by the trustees results in the "Article V non-charity distributees participating in the tax burden arising by reason of property being included in the taxable estate which is not part of the trust estate." (We are not certain of the intended scope of this latter contention. Apparently it has reference to the fact that the non-trust and non-probate assets of the net taxable estate result in the application of a higher tax bracket. The tax generated by or resulting from these assets is required to be paid out of the corpus of the trust pursuant to Article XIV, which indirectly affects the amount of the Irene trust and directly affects the amounts of the Helen and Dorothy trusts). Appellants propose that a proper formula would be to determine a "constructive federal estate tax on the figure of $456,298 (the amount of the Article V non-charity gifts), and then determine a "constructive federal estate tax" on the balance of the taxable estate after subtracting therefrom the sum of $456,298. These two "constructive taxes" would then be totaled and the ratio of each to the total determined. Article V non-charity distributees would then have attributed to them that portion of the actual

taxes equal to their ratio of the total of the two constructive taxes.

The primary objection to this proposal is that it operates upon a factual situation which does not exist. The burden of the federal estate tax is on the entire estate which generates or contributes to creating the tax, and it is on each part thereof. It is true that the federal estate tax is a graduated tax, but the graduation is a method of computing the total tax to be assessed against the total estate, and once computed the burden of that tax is then borne equally by every generating unit. There is no more reason to assume that the share of tax generated by a small gift was from the lower brackets than there is to assume that it was generated only from the highest bracket. We decline to accept appellants' alternate formula.

The trustees, with the approval of the trial court, have charged against and deducted from Article V non-charity gifts the Missouri estate tax pursuant to a formula comparable to that used for the federal estate tax. Appellants challenge the application of that formula for several reasons other than that the Missouri estate tax is not included in the taxes designated in paragraph C of Article III. The Missouri estate tax is to be paid "by the executor * * * out of the assets of the estate," Section 145.080 RSMo 1959, V.A.M.S., but when paid by the trustees pursuant to a written request of the executor as authorized and directed by Article XIV, the trustees are not to seek "recoupment or contribution" from any other source. We agree, that the Article V non-charity gifts are not to be charged with a portion of this tax, not because of any reason advanced by appellants in their second point in their brief, but because in our consideration of the first point we determine that it is not one of the taxes mentioned in paragraph C of Article III to be charged against and deducted from the amounts payable to the beneficiaries under the trust. There is to be no equitable apportionment of this tax

(if in fact such apportionment could be made, which we doubt,) pursuant to the rule of Hammond v. Wheeler, Mo., 347 S.W.2d 884, and Jones v. Jones, Mo., 376 S.W.2d 210, because the grantor exercised his right to designate the fund from which it should be paid, and he provided in Article XIV that it should be paid out of the corpus of the trust estate, without right to seek recoupment or contribution from any other source.

The trial court further held that "the estate, inheritance or succession tax, if any, imposed by the State of Kansas or any other state, payable or paid by the plaintiff-trustees should be allocated, for the purpose of determining the amount deductible therefor through a computation made in the same manner as hereinabove provided for computing the deductions in respect to the Missouri estate tax or Missouri inheritance tax, as the case may be." Appellants assert this was error because "there is no evidence in the record of this case that taxes of any nature will be assessed by any authority other than the federal government and the State of Missouri." In their brief the trustees make no answer whatever to this contention.

From the record before us we do not see how the State of Kansas or any other state could assess an estate tax, but if they could and did, such tax is not included in paragraph C of Article III, and at least to that extent the judgment of the trial court is erroneous. However, the remainder of the judgment pertaining to inheritance or succession taxes assessed by other states is proper. We do not agree that evidence of the assessment of such tax had to be introduced. The judgment applies to the principle involved.

Appellants' last point is that the trial court erred in denying their motion for allowance of attorney fees. This was done, apparently, on the theory that appellants did not prevail. However, we have determined that appellants should prevail as to the proposed allocation against their shares

of the Missouri estate tax. Although the result reached was not precisely that advocated by appellants, it was a necessary incident of the first point in their brief. "A trust beneficiary who prevents a wrongful disposition of trust assets renders a benefit to the trust estate as much as the one who recovers back property wrongfully disposed of," and where one "brings about the * * * protection of a fund in which others are entitled to share, those others will be required to contribute their proportionate part of counsel fees and expenses, and 'the equitable way to apportion these fees and expenses is to allow them against the fund.'" Jesser v. Mayfair Hotel, Inc., Mo., 360 S.W. 2d 652, 661. In view of the fact that the judgment in this case must be reversed and the cause remanded for the correction of the judgment pertaining to the reduction of Article V non-charity gifts by reason of the Missouri (or any other state) estate tax, and in view of the fact that an improper disposition of trust assets to this limited extent has been prevented, the issue of attorney fees is also remanded for the discretionary consideration by the trial court according to the principles announced in Jesser v. Mayfair Hotel, Inc., supra, and other applicable cases cited therein.

The judgment is reversed and the cause remanded with directions to reconsider the issue of attorney fees to appellants, and to enter a new judgment in which the ultimate burden of the Missouri (and any other state) estate taxes is allocated as previously indicated herein (with the resulting changes in the computation of the Irene, Helen and Dorothy trusts) ; said judgment otherwise to conform to the judgment previously entered.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.