BOATMEN'S UNION NATIONAL
BANK, Trustee, Plaintiff,

v.

Caroline Johnson WELTON, Martha Hopkins, Mark Dewey Hopkins, Thomas Christopher Hopkins, Benjamin Wood Muetzel, Robert Wood Lemon, Virginia M. Lemon, Henry M. Compton, Mamie Sweaney, Dorothy Burr, St. James Episcopal Church, Elizabeth Johnson Tuche, John Daniel Hopkins, Sara Lou Hopkins, Nancy Hopkins Steury, Sally Lemon, Kitty A. Wood, Robert Edwards, Hester Sheridan, Stella Hanks, Frances Rounkles, Goldia McCracken, Mary Hawthorne, Josephine Carson Luther, Elizabeth Harris, Morris Harris, Helen Ross, Richard Edward Carson, Drury College, Ascension Episcopal Church, Delores Todd, Vesta Doss, Pearl Sewell, Dr. Robert B. Stewart, Alpha Foster, St. Labre Indian School Education Association, Group One Defendants,

Lester E. Cox Medical Center, Group One
Defendant-Respondent,

and

Elizabeth Johnson Tuche, Stella Hanks, Kitty Symson, Grace Moulder, Earl Moulder, Caroline Johnson Wheeler Welton, Dorothy Burr, Mary Ann Johnson Rollins, Anna Johnson, Catherine Adams, Dr. Robert B. Stewart, Marguerite Lee, Elizabeth Harris, Morris J. Harris, Frances Carson, Marjorie Mann Carson, Maude Ingram, Julianna J. Everett, Eugene F. Everett, John M. Carnahan, Jr., and Turner White, Group Two Defendants,

and

James C. Johnson and Francis W.
Muetzel, Defendants-Appellants,

and

Leslie A. McNeely, Jr., Mary Ellen McDaniel, David B. McDaniel, Robert Hunt McDaniel and Richard McDaniel, Defendants-Appellants.

Nos. 12199, 12206.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 14, 1982.

Motions for Rehearing or Transfer to
Supreme Court Denied Oct. 12, 1982.

Applications to Transfer Denied
Nov. 15, 1982.

No appearance for plaintiff.

Garry E. Champion, Lloyd G. Poole, Jr., David L. Wieland, Poole, Croessmann & Champion, Springfield, for defendant-respondent Lester E. Cox Medical Center.

James E. Miller, Thomas D. Peebles, Jr., John R. Courtney, P.C., Springfield, for defendants-appellants Johnson and Muetzel.

Kenneth W. Johnson, Hamra, Greene, Johnson & Sweeney, Springfield, for defendants-appellants McDaniels and McNeely.

TITUS, Presiding Judge.

Lillie Ward Wood executed a revocable living trust agreement and a will. Plaintiff bank was named trustee of the agreement which became irrevocable when Mrs. Wood died.[1] A dispute arose as to whether, under

---

1. The will was not effectively offered for probate because the gifts of personalty described therein had been delivered to the named benefi-

the terms of the trust agreement, the federal and state taxes were to be paid from the residual portion of the trust estate or should be apportioned among the individual non-residuary beneficiaries in accordance with the value of their respective bequests under the doctrine of equitable apportionment. In effect, the court nisi held the revocable trust agreement and the will were silent as to the ultimate burden of death taxes and that the doctrine of equitable apportionment should apply. The appeal herein ensued.

Paragraphs F through HH of Article II of the trust agreement directed the trustee, upon grantor's death, to pay certain sums of money ranging from $1,000 to $100,000 to various named beneficiaries and to convey certain described parcels of real estate to various named individual beneficiaries. Paragraph II of Article II directed that if any residuary remained in the trust after the previously specifically directed payments and transfers were effected, such residuary of the trust should be paid $5,000 to Drury College and the balance thereof to Cox Medical Center. (Note: Approximately $332,130.26 would be the residuary portion of the estate to which Cox would be entitled under the trust agreement and which would be utterly exhausted if the residuary portion of the trust was alone held liable for the death taxes).

Those portions of the trust agreement applicable hereto are as follows:

"Article II ... E. Trustee may, in its sole discretion, pay part or all of any inheritance, estate, transfer and succession taxes, including interest and penalties thereon, if any, which may be imposed or assessed by reason of Grantor's death, on any property or interests therein included in Grantor's taxable estate regardless of whether it constitutes a part of this Trust Estate. Grantor waives and renounces, on behalf of this Trust and Grantor's probate estate, any right to recover from any person any part of such taxes, interest and penalties so paid.... JJ. Trustee may in its sole discretion retain such sums of money as it may deem necessary and appropriate from any and all cash gifts herein provided, for payment of Federal or State taxes, expenses of administration, debts and any sums which Trustee is of the opinion it may be required to pay over to Grantor's Executor under Article II, Paragraph E hereof. Article III ... I. Grantor specifically directs that Trustee shall have no power, with the exception of her home mentioned in Article IV, Paragraph V to sell any of her real estate for the payment of debts, costs of administration, taxes or for the purpose of paying monetary sums herein directed to be paid. In the event the personal property composing the corpus and any accrued income of Grantor's Trust Estate shall be insufficient to pay fully all monetary payments herein provided for, the Grantor directs the Trustee shall fund the gifts directed to be made under Article II, Paragraph H, and Article II, Paragraph I, and Article II, Paragraph W.[2] J. The gifts made to charities in Article II, Paragraphs HH, and II shall be ratably reduced to permit the full payment of the other gifts directed in Article II.[3] If such sums shall be insufficient to correct the deficiency, then all other monetary gifts in said Article II (other than those in Paragraph H, I, and W thereof) shall be ratably reduced."

■ Article II E, supra, contemplated payment of federal and state death taxes by the trustee if "in its sole discretion" it elected to do so. This provision, perhaps, was made because the trust contained by far the greater majority of Mrs. Wood's

---

ciaries before Mrs. Wood died. All other assets of Mrs. Wood had been transferred to the revocable trust prior to her death. Defendants named in the petition as "Group One Defendants" are beneficiaries under the trust agreement.

**2.** Paragraphs H, I and W of Article II are, respectively, gifts of $100,000 each to Francis W. Muetzel and James C. Johnson and a $30,000 gift to the Episcopal Church.

**3.** Paragraphs HH and II of Article II are, respectively, a $3,000 gift to the Indian School, a $5,000 gift payable from the residuary of the trust to Drury College and the balance of the residuary to Cox Medical Center.

assets. As observed in Note 1, supra, the testamentary estate had no assets with which to pay federal and state death taxes and the only source for doing so was the trust estate. 26 U.S.C.A. §§ 2002, 2203 and 6324(a)(1) and (2) normally contemplate that payment of federal estate taxes will be made before the estate is distributed, but provision is also made for collection of the tax if distribution precedes payment. If the tax payment is to be made after distribution, the final impact on the tax on the individual distributees is the same as though it had been paid from the estate before distribution, thus leaving state law to determine where the final impact shall be. *Riggs v. Del Drago,* 317 U.S. 95, 97–101, 63 S.Ct. 109, 110–112[1–3], 87 L.Ed. 106 (1942). Missouri, which has no statutory provision on the subject, now rejects the "burden on the residue" rule when there is no clearly expressed intention of the grantor or testatrix as to the burden of paying death taxes. Thus, in such a situation the principle of equitable apportionment will be applied. *In re Estate of Wahlin,* 505 S.W.2d 99, 107–108[5, 6] (Mo.App.1973). Consequently, in the instant matter the basic issue to be determined is whether the trust and will *clearly expressed* an intention as to whom should bear the burden of the death taxes. The reason for the rule requiring a *clearly expressed* intention is that if legacies to appellants are not subject to the death taxes, this would, in effect, increase each such legacy by the amount of the tax. *In re Mills' Estate,* 189 Misc. 136, 64 N.Y.S.2d 105, 109 (1946).

Testators via wills and grantors via trusts may designate who or what fund should bear the burden of state and federal death taxes. Cf. *Priedeman v. Jamison,* 356 Mo. 627, 630, 202 S.W.2d 900, 902 (1947). When the intent of the testator or grantor can be determined in respect to such taxes, then the doctrine of equitable apportionment has no application. See *St. Louis Union Trust Company v. Krueger,* 377 S.W.2d 303, 306 (Mo. banc 1964). In view of repeated litigation involving the basic issues herein, it is difficult to comprehend why those who concoct wills and trusts can-

not simply ascertain the testator's or grantor's specific desires on the subject and then draw the instrument so that it is plainly stated that death taxes should be borne only by either the residuary estate or by those who benefit by specific bequests, legacies and devises in wills or from trusts. Perhaps scriveners of such instruments bound for litigation simply ape forms whose authors are equally uninformed as the copier of the simple solution.

In this appeal the parties cite *Commerce Trust Company v. Starling,* 393 S.W.2d 489 (Mo.1965), and arrive at various conclusions regarding its reading. The trust agreement in *Commerce Trust Company,* inter alia, provided that upon written request of grantor's personal representative the trustees "shall pay out of the corpus of the Trust Estate, without right to seek recoupment or contribution *from any other source,* any and all ... taxes assessed against the property declared or adjudged to be a part of the Grantor's taxable estate ... or against any beneficiary of the Grantor ... under the terms of this instrument or under his Last Will and Testament or otherwise." (Emphasis mine). In *Commerce Trust Company,* l.c. 495–496[9], the court noted that while this required trustees, upon request, to pay the death taxes without right to *recoup* them from any source, the provision did not pertain to who or what fund was to bear the actual burden of the death taxes. Paragraph E, Article II in the instant case which waives on behalf of the trust and probate estate "any right to recover from any person any part of such taxes" is most similar, if not identical, to the above quoted provision in *Commerce Trust Company.* Albeit the word "person" in its primary sense may mean a natural person, in law the generally accepted meaning of the word includes artificial as well as natural persons. *City of Grand Rapids v. Harper,* 32 Mich.App. 324, 188 N.W.2d 668, 671 (1971); *People v. Guzzardo,* 4 Ill.App.2d 355, 124 N.E.2d 39, 41 (1955); 70 C.J.S. Person, at pp. 688–689. The only "source" available to trustees and personal representatives for satisfying the death tax bur-

den is from the gifts, bequests and devises made to each individual taxable "person," be that person natural or artificial. Therefore, a direction for the trustee or executor to pay death taxes without right to recover from any "source" is no different than a direction to pay such taxes without right to recover therefor from any "person." As used in the trust in *Commerce Trust Company* and in this matter, any attempt to distinguish "source" and "person" is as futile as an attempt to distinguish tweedledum from tweedledee. In any event, neither of the provisions under consideration grant insight as to who or what fund is to bear the death tax burden.

Paragraph JJ of Article II, supra, authorized that the trustee may "in its sole discretion retain such sums of money . . . from any and all cash gifts . . . for payment of Federal or State taxes . . . ." This clearly expresses no intent that death taxes were to be paid from residuary bequests. Rather, par. JJ indicates a clearly expressed intention that "any and all cash gifts" would bear some of the death tax burden. We concur with the conclusion of the court nisi that this language "gives the trustee discretion to retain money from some cash beneficiaries and not from others and to retain from any non-charity beneficiaries and not from charity beneficiaries." Specific "cash gifts" are clearly distinguishable from the residue or remainder of a trust or estate even though the residue and remainder constitute cash. "Residue" is defined in law to mean that part of a grantor's or testator's "estate which is left after all claims, charges, and bequests have been satisfied." Webster's New World Dictionary of the American Language, College Ed., p. 1238.

Article II Paragraph II of the trust provides, in effect, that only if grantor's personal estate and the proceeds of the sale of her residence shall be sufficient "to pay in full" all other cash gifts, then and only in

that event the excess or residue of the trust shall be paid $5,000 to Drury College and the balance thereof to Cox Medical Center. Appellants Johnson and Muetzel asseverate that because their trust gifts were to be paid in full before any excess was to be paid to Drury and Cox, the specific gifts to them were intended to be preferred and free of tax. As noted in *Old Folks Home of St. Louis County v. Saint Louis Un. Tr. Co.,* 313 S.W.2d 671, 678[5] (Mo.1958), priority in payment of gifts and legacies does not ipso facto indicate a preference as to the tax burden and a direction for payment in full does not necessarily mean payment free of taxes. As observed in the immediately preceding paragraph hereof, Paragraph JJ of Article II, which immediately follows Paragraph II, authorizes the trustee to retain sums of money from cash gifts for the payment of death taxes. If Paragraph II was intended, as contended by appellants, to free their cash gifts from taxation, why did the grantor immediately thereafter in Paragraph JJ authorize the trustee to retain money from cash gifts to pay the taxes? At least to us, the answer appears obvious.

Paragraphs I and J of Article III, supra, provide in substance that except for Mrs. Wood's home, the trustee should not sell any real estate to pay debts, administration costs, taxes or cash gifts and that should the personal estate and accrued interest be insufficient to fully pay all specific monetary gifts, the trustee should fund the gifts made per Paragraphs H, I and W of Article II and ratably reduce, in the order specified, all other monetary gifts.[4] These provisions concern themselves as to the original funding of the specified monetary gifts and do not deal with whether or not such funded gifts, whether gifts of realty or cash, should ultimately bear the burden of the death taxes.

In the brief of the appellants McDaniels and McNeely, the point relied on in reference to the court's disregard of the scrive-

---

4. A direction not to sell the specified real estate to pay "debts" is not a prohibition relating to the beneficiaries' necessity of perhaps selling same to pay the federal estate tax which is not a debt of the estate. *Hammond v. Wheeler,*

347 S.W.2d 884, 888 (Mo.1961). Likewise, the prohibition against selling such real estate to pay "taxes," leaves it unclear exactly what taxes were intended.

ner's testimony, while longer, is no better than the point relied on by the other appellants. After claiming the court erred in rejecting such testimony after tender, the reason given in the point is "that the trust instrument contained a latent ambiguity concerning the burden of the federal estate tax, thereby rendering such testimony admissible." As plainly seen, the point does not attempt to say what part or portions of the trust allegedly contained a latent ambiguity, wherein and why the unspecified part or portions were ambiguous or wherein and why latent ambiguous provisions made the testimony admissible. Also, and perhaps more importantly, the point does not undertake to explain the reason for contradicting appellants' previous point asseverating that the trust agreement contained no ambiguities whatsoever. However, as the procedure specified in Rule 84.08, V.A.M.R., was not followed in this case, we will briefly consider appellants' points relied on upon their merits, if any.

An ambiguity in a will or trust may be either patent or latent. A patent ambiguity is one on the face of the instrument, whereas a latent ambiguity occurs where the instrument itself is unambiguous on its face but becomes open to more than one interpretation when applied to the factual situation in issue. *Citizens Nat. Bank v. Hanes,* 541 S.W.2d 70, 71–72 (Mo.App. 1976); *Boone County, By and Through Butcher v. Blue Cross Hosp. Service, Inc., of Mo.,* 526 S.W.2d 853, 857 (Mo.App.1975). Parol evidence concerning a testator's or grantor's declarations concerning his intention, whether made before, during or after execution of will or trust, is incompetent upon the question of construction to be given to the language used in the instrument. The reason for this is that the intention is to be gleaned from the instrument itself and considered in the light of the extrinsic circumstance where the language is ambiguous. If parol evidence of oral declarations by a testator or grantor was admitted, not only would the result be to subject the question of his intention to evidence of declarations which he, being dead, could not refute, but it would also in effect violate the statutes requiring wills and trusts to be made in writing. *Matter of Estate of Katich,* 565 S.W.2d 468, 470 (Mo. App.1978); §§ 474.320 and 456.010 RSMo 1978. There are, in general, two types of will and trust provisions which present latent ambiguities: (1) Where the instrument describes a person or thing and more than one person or thing fits exactly the description or condition in the writing; (2) where no person or thing fits the description or condition but two or more persons or things fit the description or condition in part and imperfectly. *Breckner v. Prestwood,* 600 S.W.2d 52, 55[2] (Mo.App.1980). The proffered testimony of the scrivener of the will and trust herein to the effect that Mrs. Wood intended the death taxes to be paid from the residuary estate, is certainly not an undertaking to explain any type of latent ambiguity which may be legally subject to oral testimony. Such extrinsic testimony is admissible solely for the purpose of ascertaining a testator's or grantor's intention from the language actually employed. It is not admissible to show he meant one thing when he said another or to show an intention not expressed in the will or trust, or to aid in making an intended instrument which was not in fact made. *Rowe v. Strother,* 341 Mo. 1149, 1153–1154, 111 S.W.2d 93, 96 (1937); *Seltzer v. Schroeder,* 409 S.W.2d 777, 784[12] (Mo.App.1966). The trial court correctly concluded not to consider the testimony of the scrivener.

Finally we consider the contention of appellants McDaniels and McNeely that the court nisi erred in applying the doctrine of equitable apportionment to them because the Illinois real estate given these appellants via the trust should be free and clear of any claim for federal estate taxes. As previously seen, Art. II Par. E of the trust provided that "in its sole discretion" the trustee could pay part or all of the estate taxes "which may be imposed or assessed ... *on any property or interests.*" (Emphasis supplied). It seems reasonable to assume that had grantor intended the real estate in question to be free of any claims for estate taxes she would not have employed the all inclusive phrase "any property", which includes both real and personal property. *State ex rel. Reid v. Barrett,* 234

Mo.App. 684, 692, 118 S.W.2d 33, 36–37 (1938); *State ex rel. Leahy v. Barnett,* 193 Mo.App. 36, 42, 180 S.W. 458, 460 (1915). Albeit Art. III Par. I, supra, prohibited the trustee from selling Illinois real estate to pay debts, costs of administration, taxes [without specifying the kind intended] and monetary bequests, this does not per se exonerate appellants McDaniels and McNeely as real estate beneficiaries from payment of death taxes. This is not inconsistent with the discretion afforded trustee in Pars. E and JJ of Art. II to retain sums from *any* and all *cash* gifts to pay *part* or all of the death taxes. Thus if trustee elects to pay taxes on only part of the cash gifts, the beneficiaries of cash gifts upon which no taxes were paid by the trustee would, just as the real estate beneficiaries, be left to personally pay the taxes imposed on their gifts. We agree with the trial court that no trust provision necessarily implies "that beneficiaries of the real estate are to pay no death taxes."

Judgment affirmed.

FLANIGAN and PREWITT, JJ., concur.
GREENE, J., recused.