532 F.Supp. 22 (1981)
Robert H. ACORD and Bonnie I. Acord, Plaintiffs,
v.
The UNITED STATES of America, Defendant.
No. 80-1334C(5).
United States District Court, E. D. Missouri, E. D.
December 23, 1981.
Ronald N. Compton, Summers, Compton, Wells & Hamburg, Clayton, Mo., for plaintiffs.
Ludwig H. Adams, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM OPINION
CAHILL, District Judge.
This action for a refund of income tax came before the Court for a decision after trial to the Court sitting without a jury. The Court, having considered the pleadings, the testimony of all witnesses, the exhibits, and the stipulations, now makes the following findings of fact and conclusions of law under Fed.R.Civ.P. 52.

FINDINGS OF FACT
1. Plaintiff Robert H. Acord was a fulltime employee of and performed services for the School District of the City of Clayton, Missouri (the "Employer").
2. The Employer is an educational organization as described in Section 170(b)(1)(A)(ii) of the Internal Revenue Code of 1954, as amended (IRC), and, as a public school district, is an agency or instrumentality of the State of Missouri.
3. The Educational Employees Credit Union (hereinafter "EECU") is qualified to operate in the State of Missouri as a credit union under Mo.Rev.Stat. § 370.005, et seq. The EECU is exempt from federal income tax under IRC Section 501(c)(14)(A). The EECU is a federally insured credit union with each share account being insured in the sum of $100,000.00.
4. The Division of Credit Unions for Missouri approved EECU's issuance of a special class of shares under rules and regulations entitled "The Educational Employees Credit Union Share Account" (the "Plan").
5. In late November or early December of 1978, Superintendent Dr. Earl W. Hobbs of the School District of Clayton was approached by plaintiff Robert Acord and EECU General Manager Sterling Redfern concerning the School District's potential participation in an annuity program created by EECU. Under this program, the School District would enter into salary reduction agreements with participating employees, and then contribute the amounts of the salary reductions to EECU Special Share Accounts on behalf of those employees.
6. On December 6, 1978, Dr. Hobbs discussed the program at an informal meeting of the School Board, and the Board gave informal approval to it. Under the plan, *23 plaintiff Robert Acord entered into a salary reduction agreement with the Employer and $25.00 was withheld from his earnings for the month of December, 1978.
7. The Employer, in accordance with the salary reduction agreement, contributed $25.00 in December, 1978, to a non-transferable, non-forfeitable EECU Special Share Account.
8. The amount of the contribution ($25.00) made by the Employer on Robert Acord's behalf did not exceed the applicable exclusion allowance for 1978, as defined by IRC Section 403(b)(2). During 1978, Robert Acord was not a participant in any other plan which would qualify under IRC Section 403(b).
9. Plaintiffs Robert and Bonnie Acord timely filed Form 1040, U. S. Individual Income Tax Return for the year ending December 31, 1978, with the Internal Revenue Service Center in Kansas City, Missouri, and paid all federal income tax due, including the $14.00 in dispute.
10. On June 22, 1979, plaintiffs filed a claim for refund in the sum of $14.00, based upon their contention that under IRC Section 403(b) they were entitled to exclude from gross income $25.00 which had been placed in an account at the EECU for Robert Acord by the School District of Clayton. The Internal Revenue Service denied plaintiff's claim for refund on July 22, 1980, and plaintiffs instituted this action for the refund on October 16, 1980.

CONCLUSIONS OF LAW
1. In order to qualify as a tax-deferred annuity program under 26 U.S.C. § 403(b)(1) of the Internal Revenue Code of 1964, the employer must purchase for the employee an annuity contract.
2. Title 26 U.S.C. § 403(b)(1) in relevant part provides:
If an annuity contract is purchasedfor an employee, who performs services for an educational organization described in section 170(b)(1)(A)(ii), by an employer which is a State, a political subdivision of a State, or an agency or instrumentality of any one or more of the foregoing, such annuity contract is not subject to subsection (a), and the employee's rights under the contract are nonforfeitable, except for failure to pay future premiums, then amounts contributed by such employer for such annuity contract on or after such rights become nonforfeitable shall be excluded from the gross income of the employee for the taxable year to the extent that the aggregate of such amounts does not exceed the exclusion allowance for such taxable year. The employee shall include in his gross income the amounts received under such contract for the year received as provided in section 72 (relating to annuities). For purposes of applying the rules of this subsection to amounts contributed by an employer for a taxable year, amounts transferred to a contract described in this paragraph by reason of a rollover contribution described in paragraph (8) of this subsection or section 408(d)(3)(A)(iii) or 409(b)(3)(C) shall not be considered contributed by such employer.
3. Revenue Ruling 55-639, which was declared obsolete but not revoked, defines an annuity contract as:
An annuity contract within the meaning of section 402 or 403 of the Internal Revenue Code of 1954 is a contract which provides primarily for periodic installment payments to the annuitant named therein, and under which the death benefits at any time cannot exceed the larger of the reserve or the total premiums paid for the annuity benefits.
(Emphasis added.)
Black's Law Dictionary defines annuity as "a yearly payment of money for life or years."
4. There is no definition in the Internal Revenue Code or the Treasury Regulations which specifically defines the term "annuity contract." The significance or difference between the two terms has not been explained by the Internal Revenue Service. Similarly, defendant produced no statute, regulation, case law, or agency interpretation which differentiates the phrase *24 "annuity contract" from the term "annuity." The Court, therefore, deduces that an "annuity contract" is simply a contract to provide an "annuity."
5. The EECU qualifies for treatment under 26 U.S.C. § 403(b), and issues, under the Plan, non-transferable, non-forfeitable annuity contracts. The funding vehicle is an arrangement which creates an obligation to provide an annuity for a participating employee upon retirement. A contract is created, as enrollment in the Plan creates a separate account for the employee, and a contractual liability for the credit union to provide an annuity, per the terms of the Plan.
6. Although annuity contracts have been historically issued by insurance companies, it is not clear that insurance companies are the sole entities which are authorized to issue annuities under 26 U.S.C. § 403(b)(1). There is conflicting authority on this issue. Revenue Rulings 67-361 and 67-387, which have not been revoked and which have been valid almost 15 years, suggest that plans have qualified for 26 U.S.C. § 403(b) status, although the contracts were not funded by insurance policies or purchased from life insurance companies. A federally insured, state chartered credit union provides greater security for depositors than an insurance company which is subject only to the regulation of a state insurance department. Therefore, this Court concludes that a federally insured, state chartered credit union may issue annuities for purposes of 26 U.S.C. § 403(b)(1) and the Plan qualifies for 26 U.S.C. § 403(b)(1) status.
7. In that the Court has determined that the program qualifies as a tax-deferred annuity under 26 U.S.C. § 403(b)(1), the Court will not reach the 26 U.S.C. § 403(b)(7) issue.
8. The plaintiffs are entitled to a refund of tax and judgment is entered in favor of the plaintiffs in the sum of $14.00.