**Dr. Donald C. CORBIN and Bonnie Sue Corbin, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 83–2619C(B).**

United States District Court, E.D. Missouri, E.D.

Aug. 22, 1984.

Order Overruling Motion For New Trial Sept. 7, 1984.

Michael M. Sayers, St. Louis, Mo., for plaintiffs.

Bruce D. White, St. Louis, Mo., Ludwig Adams, Trial Tax Dept., Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND OPINION

REGAN, District Judge.

In this action for refund of $710 in individual income taxes paid by plaintiffs for the year 1982, the essential facts have been stipulated. The issue is one of law, namely, whether plaintiffs are entitled under 26 U.S.C. § 403(b)(1) to exclude from their 1982 gross income amounts contributed for their benefit by Dr. Corbin's employer, pursuant to a salary reduction agreement, to a non-transferable, nonforfeitable, credit union special account.

As stipulated by the parties, we make the following findings of fact:

1. At all times relevant herein, Plaintiff Dr. Donald D. Corbin (the Employee) was a full-time common-law employee of and performed services for the Fox C–6 School District of Jefferson County, Missouri (the Employer).

2. The Employer is an educational organization as described in Section 170(b)(1)(A)(ii) of the Internal Revenue Code of 1954 as amended ("IRC"), and, as a public school district is an agency or instrumentality of the State of Missouri.

3. The Educational Employees Credit Union ("EECU") is qualified to operate in the State of Missouri as a credit union under Chapter 370 R.S.Mo., and is exempt from federal income tax under IRC Section 501(c)(14)(A).

4. EECU is a federally insured credit union (within the meaning of the Federal Credit Union Act, 12 U.S.C. Section 1751 et seq.) with each share account being insured up to $100,000.

5. Prior to 1982, EECU began administering an arrangement pursuant to which an eligible employer could make a contribution on behalf of a qualified employee of an amount determined according to a salary reduction agreement with such employee to a separate nonforfeitable special share account maintained by EECU. The eligibility of the employer, the qualification of the employee, and the nature of such special share account are determined according to the rules and regulations of EECU entitled "Rules and Regulations of Educational Employees Credit Union Tax-Sheltered Annuity Special Share Accounts Class XI".

6. By resolution of May 18, 1982, Employer approved and adopted said EECU's Rules and Regulations, and approved the execution of a salary reduction agreement with participating employees.

7. Ten days later, on May 28, 1982, Employee entered into a salary reduction agreement with Employer. In accordance therewith, Employer contributed the sum of $2,100 during 1982 to a non-transferable, nonforfeitable EECU Special Share Account Class XI held by EECU for the benefit of Employee. The Special Share Account was intended by the parties to qualify as the purchase of an annuity under IRC Section 403(b). However, both EECU and Employer specifically disclaimed guaranteeing the tax status of the account.

8. The foregoing contributions made by Employer during 1982 on behalf of Employee did not constitute the purchase of an annuity contract referred to in subsection (a) of IRC Section 403. They did not exceed Employee's applicable exclusion allowance for 1982, as defined in IRC Section 403(b)(2). During said year, Employee was not a participant in any plan which would qualify under IRC Section 403(b).

9. Plaintiffs timely filed their Form 1040 U.S. Individual Income Tax Return for the year ending December 31, 1982, and paid all federal income taxes due, including the $710 in dispute.

10. On May 4, 1983, plaintiffs filed a claim for refund of $710 in 1982 income tax, based upon their contention that under IRC Section 403(b) they were entitled to exclude from their gross income the $2,100 contributed by Employer to the EECU Special Share Account.

11. By letter dated September 15, 1983, the Internal Revenue Service disallowed plaintiffs' claim.

12. This suit, as was that of *Accord v. U.S.*, 532 F.Supp. 22, is directed and financed by EECU as a test case to obtain a judicial determination of the contentions asserted herein.

Section 403(b)(1) provides in relevant part that if an annuity contract is purchased for an employee who performs services for an educational organization (such as the Fox C–6 School District), and the employee's rights under the contract are nonforfeitable, except for *failure to pay future premiums*, then amounts contributed by such employer for such annuity contract are excluded from the gross income of the employee for the taxable year.

The major controverted issue is whether the employer school district purchased for its employee an annuity contract as that term is used in Section 403(b) by causing the EECU special share account to be opened in the name and for the benefit of Dr. Corbin and making contributions thereto pursuant to their salary reduction agreement. It is the position of the Internal Revenue Service (IRS), unequivocally set forth in Revenue Ruling 82–102, that the special share account in the credit union does not qualify as an "annuity contract" entitled to tax deferred benefits under Section 403(b) of the Internal Revenue Code, because it is not funded by or purchased from an insurance company. Relying on *Accord v. U.S.*, 532 F.Supp. 22 (D.C.E.D. Mo.1981) plaintiffs contend that for purposes of Section 403(b) annuity contracts may be issued by entities other than insurance companies, that a state regulated, federally insured credit union such as EECU is one of such entities, and that the EECU special share account constitutes an annuity.

An annuity, as commonly understood, is a sum paid to an annuitant in periodic installments either for life or for a certain period. Although the special share account has a provision for such payments, it further authorizes the employee, on sixty days notice, to obtain distribution in whole or in part of the amount in his account, a provision which is inconsistent with the basic concept of providing a retirement income.

*Acord* concluded that in view of the fact (1) that in Revenue Rulings 67–361 and 67–387 (which at that time had not been revoked), the Internal Revenue Service sanctioned certain self-funded employer re-

tirement plans, and thus by implication ruled that Section 403(b) plans need not be funded by insurance companies, and (2) that "(a) federally insured, state chartered credit union (such as EECU) provides greater security than an insurance company which is subject only to the regulation of a state insurance department", such a credit union may issue annuities for purposes of Section 403(b)(1).

◼ Subsequent to *Acord*, the Internal Revenue Service revoked Revenue Rulings 67–361 and 67–387, and issued Revenue Ruling 82–102 which expressly holds that arrangements qualifying under Section 403(b)(1) *must* be funded by insurance company annuity contracts. By revoking Revenue Rulings 67–361 and 67–387, the IRS destroyed the linch-pin of *Acord*.

With all due respect to the learned author of *Acord*, it is our view that the mere fact, if so, that a federally insured state chartered credit union provides greater security for depositors than at least some insurance companies is irrelevant. If Section 403(b)(1) be construed to make no requirement that an annuity contract be funded by an insurance company, it necessarily follows that *any* nonforfeitable contract to provide an annuity would be permissible, irrespective of the amount of security the issuing entity affords. In our judgment, this is an all or none situation; else who would be authorized to draw the line as to who may issue such annuities, and what criteria would be used? We do not believe that the courts have the power to examine into the financial and management soundness of a particular entity to determine whether tax deferments should be granted with respect to *that* entity's annuity contracts.

As *Acord* pointed out, "annuity contracts have been historically issued by insurance companies", and in our view that is the context in which Section 403(b)(1) was drafted. Although the statute does not in terms so provide, the absence of any language listing entities other than insurance companies as qualified to issue these annuities convinces us that Congress did not intend to grant carte blanche authority to any and *all* entities to deal in Section 403(b) annuities, with possible disastrous results to the beneficiaries. We add that the provision requiring that the employee's rights under the annuity contract be nonforfeitable "except for failure to pay future *premiums*" is a further indication of the Congressional intent that Section 403(b) arrangements be funded by insurance company annuity contracts.

Evidencing Congressional belief that under Section 403(b)(1) contributions to such plans "may be invested *only* in insurance contracts" is the statement to that effect in H.R.Rep. 93–807, 93rd Cong. 2d Sess. 162 (1974), U.S.Code Cong. & Admin.News 1974, 4639, 4827. Based on that understanding, Congress added Section 403(b)(7) to the statute in connection with its comprehensive revision of the law relating to employee retirement plans in ERISA. In Section 403(b)(7), Congress expanded the original concept of Section 403(b) by providing that employer contributions placed in qualified custodial accounts and invested in mutual funds (regulated investment) stock may be treated as contributions for an annuity contract. What this enactment evidences is the Congressional intent that it would provide more flexibility in the Section 403(b) area *only* to the extent and under the conditions *specifically* authorized by the statute.

◼ Plaintiffs make the alternative contention that in any event they are entitled to the tax refund on the ground that defendant is estopped from denying their claim. They base this contention on the theory that the IRS discriminatorily exercised its discretion in denying Dr. Corbin the benefit of the retroactive relief granted to others in Revenue Ruling 82–102. We find no estoppel.

Revenue Ruling 82–102 unequivocally (and publicly) announced the position of the IRS that the arrangement here involved does not meet the requirements of Section 403(b) because it is not funded by insurance contracts (nor invested in regulated investment company stock), and for such reason the contributions administered by the credit

union do not constitute the purchase of an annuity contract for purposes of the statute and so are not excludable from the gross income of the employee.

However, taking note that the prior Revenue Rulings 67–361 and 67–387 which had authorized certain arrangements not funded by insurance contracts to be treated as annuities had been relied on by various employers, Revenue Ruling 82–102 specified pursuant to 26 U.S.C. Section 7805(b) that it would not be applied to contracts entered into by an *employer* on or before the date the Ruling was published (May 17, 1982) if the contract would have met the requirements of section 403(b) but for the fact that it was not purchased from an insurance company, and the contract only covers current and future employees of *that* employer.

Excepted from the broad scope of this relief were employees who became covered for the first time under such contracts after (May 17, 1982) if the I.R.S. had theretofore issued a written communication to the effect that the program under which the contract was issued did not meet the requirements of section 403(b) because it was not purchased from an insurance company. Thus, the Ruling totally exempted from its application arrangements adopted by an employer prior to May 17, 1982, with the exception of employees who became covered for the first time after May 17, 1982 under a program which the IRS had theretofore ruled did not qualify for tax deferment benefits.

Dr. Corbin's *employer,* the Fox C–6 School District, "purchased" or became a party to what it was told by EECU was an "annuity contract" for the benefit of Dr. Corbin *subsequent* to May 17, 1982. It had not theretofore, prior to May 17, 1982, participated in any such arrangement or contract not funded by an insurance company which covered *any* of its employees, much less Dr. Corbin. Hence, the Ruling operates *prospectively only* as to the *Fox C–6 School District* and its employees.

Insofar as Dr. Corbin is concerned there can be and is *no* issue of retroactivity.

The relief from retroactive application of Revenue Ruling 82–102 is granted to those *employers and employees* who prior to May 17, 1982 had presumptively acted in reliance on the subsequently revoked Revenue Rulings. The sole purpose of granting the retroactive relief was to avoid possible injustice to those *employers* and the employees who unlike Fox C–6 School District and Dr. Corbin had *theretofore* in good faith entered into plans which did not meet the requirements of Section 403(b). Plaintiffs are without standing to complain of any adverse effect of the Ruling upon the *future* business of *EECU.*

It follows from the foregoing, and we conclude as a matter of law

(1) that by establishing a special share account on behalf of Dr. Corbin at EECU in accordance with the latter's Rules and Regulations, the Fox C–6 School District did not purchase an annuity contract for purposes of 26 U.S.C. Section 403(b)(1),

(2) that the arrangement involving EECU, the Fox C–6 School District and Dr. Corbin does not qualify as a tax-deferred annuity contract within the meaning of 26 U.S.C. Section 403(b);

(3) that the $2,100 contribution by the Fox C–6 School District to the Special Share Account is not excludible from plaintiffs' gross income for the 1982 calendar tax year;

(4) that defendant is not estopped from applying Revenue Ruling 82–102 to plaintiff Dr. Donald D. Corbin as a basis for denying plaintiffs' claim for refund; and

(5) that plaintiffs are not entitled to the refund of the $710 in dispute or any portion thereof and that their complaint should be dismissed with prejudice.

The foregoing memorandum and opinion constitutes our findings of fact and conclusions of law.

### ORDER OVERRULING MOTION FOR NEW TRIAL

Before us is plaintiffs' motion for a new trial.

The sole basis of the motion is plaintiffs' contention that in finding that Section 403

(b) annuity contracts must be funded by or purchased from insurance companies, the Court has drawn a factual distinction between the withdrawal provisions of "annuity contracts" purchased from or funded by insurance companies and the EECU arrangement. No such factual distinction was made or intended.

What we held was simply that an "annuity contract" which is not funded by or purchased from an insurance company is not entitled to tax deferment benefits under Section 403(b) of the Internal Revenue Code, and for *that* reason, the employer contributions administered by EECU do not constitute the purchase of an annuity contract for purposes of the statute.

We drew no other distinction between annuity contracts funded by or purchased from insurance companies and the EECU arrangement. Our ruling would be precisely the same whether or not "annuities" funded by or purchased from some insurance companies also permit the employee to obtain early lump sum distributions in whole or in part upon sixty days notice, as does the EECU arrangement. Our comment during the course of our opinion that we believe such early withdrawal provision in the EECU special share account is *inconsistent* with the basic concept of providing a *retirement* income upon which Section 403(b) is premised was not a basis for our holding that the EECU arrangement did not qualify for tax deferment benefits, and was not so intended.

We add that if the early distribution provision would of itself invalidate the EECU arrangement, the validity of any similar provision in an insurance company annuity contract for purposed of tax deferment benefits would also be affected. However, the issue of whether *any* Section 403(b) annuity contracts (including those of insurance companies) may *permissibly* contain early distribution provisions was neither tried, submitted, nor decided.

Plaintiffs' motion for a new trial is without merit. It should be and it is HEREBY OVERRULED.