Marjorie L. SCHUPBACH, Personal Representative of the Estate of Paul R. Schupbach, Deceased, and Estate of Paul R. Schupbach, Marjorie L. Schupbach, individually, and the Boatmen's National Bank, Respondents,

v.

Elizabeth A. SCHUPBACH and John Eric Schupbach, minors, Appellants.

No. 15502.

Missouri Court of Appeals, Southern District, Division One.

Nov. 28, 1988.

---

Richard E. Dorr, Dorr, Baird & Lightner, P.C., Springfield, for respondents.

Michael J. Patton, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for appellants.

GREENE, Judge.

The court-appointed guardian ad litem (guardian) for Elizabeth A. Schupbach and John Eric Schupbach, minor children of Paul R. Schupbach (Paul), deceased, and Marjorie L. Schupbach (Marjorie), appeals from the trial court's judgment declaring that the family trust portion of a trust agreement executed by Paul prior to his death, be funded from his estate in the amount of $325,000, with the balance of the estate to be distributed to Paul's widow, Marjorie.

Since the case was court-tried, it is our duty to affirm the judgment if it is supported by substantial evidence, if it is not against the weight of the evidence, and if it is not based on any erroneous declaration or application of law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

 In his sole point relied on, the guardian asserts that:

The trial court erred in holding that Article Three of the trust (the 'Family Trust') should be funded only to the extent of $325,000 rather than being funded by all of the assets distributed under Article III of the will, because the will and trust are not ambiguous and clearly provide that all of the assets distributed under Article III of the will are to be distributed to the trustee of the family trust established by Article Three of the trust agreement.

We cannot tell from the language of the point relied on whether the guardian is claiming that the trial court's judgment lacked substantial evidentiary support, or that the judgment was based upon an erroneous declaration or application of law. We would be justified in holding that the point has not been properly preserved for appellate review because of its failure to adequately explain wherein and why the trial court's judgment was erroneous, Rule 84.04(d).[1] However, because the interests of minor children are involved, we review

the trial court's judgment to determine whether it was based on plain error affecting substantial rights of the children that resulted in manifest injustice or a miscarriage of justice. Rule 84.13(c).

The argument portion of the guardian's brief seems to indicate that the complaint is that the trial court erred in admitting into evidence, over objection, extrinsic evidence as to what Paul's intent was regarding how the family trust, established under the terms of his will and trust agreement, should be funded. If we interpret the argument correctly, the guardian is contending that such evidence was inadmissible because the will was not ambiguous as to how the family trust should be funded, and that absent such an ambiguity, the extrinsic evidence concerning the testator's intent was inadmissible. Apparently, the guardian is trying to say that the trial court misapplied the law when it admitted the extrinsic evidence and, in doing so, committed error.

The relevant facts are as follows. On April 4, 1984, Paul R. Schupbach executed a will and a separate trust agreement. Both documents were prepared by his attorney, Harold F. Glass. After directing his personal representative to pay all of his debts, and bequeathing all of his tangible personal property to his wife, Marjorie, Paul's will, in Article III, provided as follows:

All of my residuary estate I give and devise to BOATMEN'S NATIONAL BANK, Springfield, Missouri, which is named trustee of the Family Trust in the Trust Agreement dated April 4, 1984, between myself, as Grantor, and BOATMEN'S NATIONAL BANK as trustee, or if it shall not then be acting trustee of said Family Trust, then to the acting trustee of said trust, as trustee, such residuary estate to become a part and parcel of the said Family Trust and to be held, administered and distributed pursuant to the terms thereof. If at the time of my death under the circumstances

---

1. Missouri Rules of Court, V.A.M.R.

contemplated by this Article III my aforesaid Family Trust shall not be in full force and effect, then my said residuary estate shall be divided and distributed outright and free of trust to my children who survive me, in equal shares, per stirpes.

Relevant portions of the trust agreement are contained in Articles Three and Four of the agreement. The pertinent portion of Article Three reads as follows:

If the Grantor's wife survives him the trustee shall immediately set aside out of the trust estate as a separate trust to be known as the "Family Trust", a pecuniary sum equal to the largest amount, if any, that can pass free of federal estate tax under this trust by reason of the Unified Credit and the State Death Tax Credit (provided that the State Death Tax Credit shall not be used if use of such credit will increase the state death taxes otherwise payable), but no other credit, after taking account of dispositions under other Articles of this trust, property passing outside of this trust, and all charges to principal that are not deducted in computing the Grantor's federal estate tax. The Grantor recognizes that no part of his estate may be disposed of by this Article and that the part of his estate disposed of by this Article may be affected by the action of the trustee in exercising certain tax elections. Such elections by the trustee shall be final, conclusive and binding for all purposes.

The Grantor directs that for the purpose of establishing the sum hereinabove disposed of, the trustee shall use the values as finally determined for federal estate tax purposes, or if no federal estate tax return is required with respect to the Grantor's estate, the trustee shall determine the values which shall be used, and such determination shall be final, conclusive and binding.

Article Four states:

If the Grantor's wife survives him, the trustee shall distribute to her outright and free of trust the remainder of the trust estate not otherwise disposed of hereunder.

If the Grantor's wife does not survive him then this marital distribution portion shall be held, managed and distributed in accordance with provisions of the ARTICLE THREE Family Trust.

After Paul's death on July 6, 1984, a dispute arose as to the interpretation of the provisions of the will and trust agreement regarding the family trust. Thomas Magnan, who was Paul's accountant, prepared and filed a federal estate tax return which showed funding of the family trust in the amount of $325,000 (the maximum exemption equivalent amount allowed under the federal estate tax laws in 1984), with the balance of the trust estate, which was in excess of $600,000, going to Marjorie under the provisions of Article Four of the trust agreement. After the return was filed, the Internal Revenue Service (I.R.S.) disagreed with Magnan's interpretation of the meaning of the will and trust agreement, contending that the intent of those documents required that the family trust be funded by all of the property passing under Article III of the will, which property was of the value of approximately $925,000, instead of in the amount of $325,000 as contended by Magnan. Magnan's interpretation, if adopted, would result in no federal estate taxes, while the I.R.S. interpretation would cause approximately $179,000 in federal estate tax to be due.

In order to resolve the dispute, Marjorie, as personal representative of Paul's estate, filed a petition in the Circuit Court of Christian County, Missouri, requesting a declaratory judgment as to whether the family trust portion of the trust agreement was to be funded only to the extent of $325,000, with the balance of the estate to be distributed to her, or whether it was to be funded to the full extent of the residuary estate referred to in Article III of the will.

At trial, over objection of the guardian, Marjorie, Mr. Mangan, and Mr. Glass testi-

fied regarding Paul's intent as to how the family trust was to be funded. The objection was to the effect that there was no ambiguity in the terms of the will or the trust agreement and, therefore, because of Missouri law on the subject, extrinsic evidence of the testator's intent was inadmissible. The trial court took the objection under advisement and permitted the testimony, stating that if it later decided to sustain the objection, the testimony would be ordered stricken. After examination of the will and trust agreement, and consideration of the testimony of Mangan, Marjorie, and Glass, the trial court made written findings of fact and conclusions of law, and entered the judgment previously stated.

In its findings of fact, the trial court stated that when read separately, the will and trust agreement do not contain ambiguities, and "[a]ny ambiguity between the Trust and Will instruments (Exhibits 1 or 2), when said instruments are read together, is a latent ambiguity." While this statement does not specifically say that the trial court found a latent ambiguity when comparing the two instruments, an examination of the remaining findings of fact, conclusions of law, and judgment conclusively indicates that the trial court, by finding that it was Paul's intent to limit the funding of the family trust to the maximum exemption equivalent, found that there was a latent ambiguity. The court could not have made a finding as to Paul's intent solely by an examination of the documents, but would have had to have considered the testimony of the three witnesses to arrive at such a conclusion.

Our findings in this regard are buttressed by additional findings of fact made by the trial, examples of which are as follows:

6. In 1982, Paul R. Schupbach discussed his estate planning with attorney, Harold F. Glass.

9. Paul R. Schupbach had a previous Will dated June 11, 1974 (Exhibit 4).

10. The Will dated June 11, 1974, contained provisions which provided for the maximum marital deduction with the remainder of the estate property to go into a trust.

11. The law with regard to the amount of the marital deduction had changed to an unlimited marital deduction by 1982.

12. Attorney, Harold F. Glass discussed this change in the law with Paul R. Schupbach while they were discussing his estate planning.

14. At the time of his estate planning, Paul R. Schupbach stated and indicated that he desired to avoid taxes.

15. At the time of his estate planning, Paul R. Schupbach stated his desire for everything to go to Marjorie L. Schupbach without the use of a trust instrument.

16. Attorney, Harold F. Glass suggested the use of a family trust or 'credit shelter' trust as part of an estate planning device.

17. At the time Paul R. and Marjorie L. Schupbach met with attorney, Harold F. Glass to discuss their estate planning, the use of the estate tax exemption equivalent amount to fund the family trust was discussed.

19. At the time of the estate planning discussions, attorney, Harold F. Glass suggested the use of a second trust to hold property for Marjorie L. Schupbach, however, Paul R. Schupbach rejected the use of a trust for the property passing to Marjorie L. Schupbach.

28. The intent of attorney, Harold F. Glass in preparing the Will and Trust instruments included the desire to avoid taxes, utilize the maximum exemption equivalent, and take advantage of the unlimited marital deduction for the amount over the exemption equivalent.

29. The intent of Harold F. Glass and Paul R. Schupbach was to limit the funding of the family trust to the maximum exemption equivalent.

They are further buttressed by the following conclusions of law by the trial court:

1. Any ambiguity between the Trust and Will instruments is latent ambiguity.

2. The intent of the testator, Paul R. Schupbach, is admissible for purposes of construction of the Will and Trust instruments.

3. Testimony of the Scrivener of the Trust and Will instruments is admissible.

4. The Will and Trust instruments must be read together and interpreted to give effect to both instruments if possible.

5. The maximum amount of funding for the family trusts provided for in Article III of the Trust instrument is $325,000.

6. The balance of the residuary estate in excess of $325,000 is to be distributed outright to Marjorie L. Schupbach under Article IV of the Trust instrument.

The only question facing us is whether the trial court was justified in holding that the will and the trust agreement when considered together created a latent ambiguity which required extrinsic evidence to resolve.

 " '[A]mbiguity' means 'duplicity, indistinctness or uncertainty of meaning of an expression used in a written instrument.' " *Tenney v. American Life and Accident Ins. Co.,* 338 S.W.2d 370, 371 (Mo.App.1960) (quoting *Peters v. Briska,* 191 S.W.2d 993, 996 (Mo.App.1946)). An ambiguity in a will or trust may be either patent or latent. A patent ambiguity occurs when the duplicity, indistinctness, or uncertainty of meaning appears on the face of the instrument being considered, which, in this case, would be on the face of the will or on the face of the trust agreement. A latent ambiguity occurs when the instrument being considered is unambiguous on its face but becomes open to more than one interpretation when applied to the factual situation in issue, which here would be a comparison of the terms of the will and the trust agreement. *Boatmen's Union Nat. Bank v. Welton,* 640 S.W.2d 497, 502 (Mo. App.1982).

 If a patent ambiguity is found on the face of the instrument being considered, extrinsic evidence of objective, operative facts concerning events in the testator's life may be introduced in evidence in order to ascertain his exact intent, and to give precise and explicit meaning to the language used in the instrument. In the case of a will, "where a patent ambiguity exists, extrinsic evidence is admissible to determine the amount, nature, extent and condition of a testator's property, his relation to or association with persons having an interest in his property, any motives which could have actuated the testator, and the persons who were the natural objects of his bounty." *Breckner v. Prestwood,* 600 S.W.2d 52, 55 (Mo.App.1980). This type of evidence does not include evidence of declarations by the testator of his intent; such evidence is generally inadmissible. However, in cases where the ambiguity is latent, a testator's declaration of intent is admissible to explain the ambiguity. The rationale supporting this evidentiary rule is that evidence of declarations of the testator's intent does not add to or replace an explicit designation in the instrument as to who the beneficiaries are or what property or instrument is being described, which here was the family trust, but merely gives to the designation the precise meaning intended by the testator. *Id.* at 56. In cases where a latent ambiguity exists, not only is evidence of surrounding facts and circumstances admissible; but, in addition, testimony regarding declarations made by the testator concerning such matters as the identity of a beneficiary, the identity of ambiguously described property, or to rebut some equity or presumption is also admissible. *Winkel v. Streicher,* 365 Mo. 1170, 295 S.W.2d 56, 59 (banc 1956). Such evidence may include testimony of the scrivener regarding the testator's intentions. *Matter of Estate of Katich,* 565 S.W.2d 468, 469 (Mo.App.1978). Applying these principles of Missouri law, we are of the opinion that if the will and trust agreement under consideration, when read and considered together, reveal a latent ambiguity, the testimony of the accountant, Mangan, the widow, Marjorie Schupbach,

and the scrivener, Harold Glass, were admissible.

Article III of the will directs that *all* of the residuary estate be placed in the family trust to be held, administered, and distributed according to the terms of the trust agreement. Article III of the trust agreement provides that if Marjorie survives Paul, which she did, there should be established a "Family Trust," a pecuniary sum equal to the largest amount that could pass free of the federal estate tax, which amount at the time of Paul's death was $325,000. The provisions in the will directing that an unlimited amount be placed in the family trust is in direct conflict with the specifically limited funding of the family trust that is set out in the trust agreement.

Since the will and trust agreement form a part of the same estate plan, they must be construed together. *Commerce Trust Company v. Starling*, 393 S.W.2d 489, 494 (Mo.1965). In considering the documents separately, one can seemingly ascertain Paul's intent as to the amount he wished placed in the family trust; however, when they are considered together, as they must be, it is impossible to ascertain, with any degree of certainty, what his intent was. A latent ambiguity exists which needed extrinsic evidence to resolve. The trial court was correct in considering the testimony of Mangan, Marjorie, and Glass as an aid in determining Paul's actual intent.

JUDGMENT AFFIRMED.

CROW, C.J., concurs.

MAUS, J., concurs and files concurring opinion.

HOLSTEIN, C.J., recused.

**MAUS, Judge, concurring.**

I concur in the result. The will and the trust instrument were contemporaneously executed as a part of a single testamentary plan.

[T]he instruments must be construed to avoid, if possible, repugnancy in the various provisions, ... and when, as here, a trust agreement and a will form parts of the same plan, the documents must be construed together.

*Commerce Trust Company v. Starling*, 393 S.W.2d 489, 494 (Mo.1965) (citations omitted). Also see *Love v. St. Louis Union Trust Company*, 497 S.W.2d 154 (Mo. banc 1973); *Estate of Fleischmann v. Fleischmann*, 723 S.W.2d 605 (Mo.App. 1987). When so construed, there is an ambiguity in the meaning of the will concerning the assets of the testator with which the "family trust" is to be funded. However, I do not believe this ambiguity is such that it causes the declarations of the testator concerning his testamentary intent to be admissible. Hanna and Borron, 5 Missouri Probate Law and Practice, § 315 (1988).

I do believe the proper construction of the will, when considered with the trust instrument, reaches the same result as the majority opinion. The applicable principles of construction include the following.

The controlling rule in construing wills in this state, to which all technical rules of construction must give way, is to give effect to the true intent and meaning of the testator as the same may be gathered from the whole instrument, if not violative of some established rule of law; and in arriving at that intention the relation of the testator to the beneficiaries named in the will and the circumstances surrounding him at the time of its execution are to be taken into consideration, and the will read as near as may be from his standpoint, giving effect, if possible, to every clause and portion of it, and *to this end, if need be, words may be supplied and omitted*, and sentences transposed.

*Grace v. Perry*, 197 Mo. 550, 95 S.W. 875, 877 (1906) (emphasis added). Those circumstances include "any motives which reasonably could have actuated testator in the disposition of his property." *Lehmann v. Janes*, 409 S.W.2d 647, 654 (Mo.1966).

It is our task here to find the general purpose of the testator, to reconcile and

co-ordinate provisions which may appear to be in conflict when such reconciliation and co-ordination can reasonably be made consistent with the general purpose, and, if the testator was confused in the expression of his desires, to pierce through such confusion and reduce to articulate terms the underlying intent. *Coleman v. Haworth,* 320 Mo. 852, 8 S.W. 2d 931, 932–933 (1928), 7 A.L.R.2d 268 (1949).

Significant circumstances to be considered in construing the will of Paul R. Schupbach include the following. The testator had great affection for his wife. He had confidence in entrusting property to her. He was familiar with the impact of the federal estate tax. By his prior will he devised directly to his wife such portion of his estate required to secure the maximum marital deduction. He devised the remainder to a non-marital trust for the benefit of his wife and children. His obvious purpose was to take advantage of the marital deduction and minimize the federal estate tax resulting from the death of both parties.

Article III of the trust instrument provides that if the grantor's wife survived him, the "family trust" should be funded with an amount equal to the largest amount that could "pass free of federal estate tax under this trust by reason of the Unified Credit and the State Death Tax Credit...." Article IV of the trust instrument provides that if the grantor's wife survived him "the trustee shall distribute to her outright and free of trust the remainder of the trust estate not otherwise disposed of hereunder." As noted, Article III of the will devised testator's residuary estate to the named trustee adding that "such residuary estate to become a part and parcel of the said Family Trust." The latter provision is in direct conflict with the residuary clause of the trust instrument.

Considering the surrounding circumstances, the obvious intent of the testator is to fund the family trust only to the extent the creation of that trust will result in the minimum federal estate tax being imposed upon the death of both husband and wife. This intent is not to be defeated by an inadvertent misuse of language. *Briant v. Garrison,* 150 Mo. 665, 52 S.W. 361 (1899); 5 Missouri Probate Law and Practice, § 364. The will should be construed to effectuate this intent and if need be, words may be supplied and omitted and sentences transposed. The residuary clause of the will should be construed to read as follows:

> All of my residuary estate I give and devise to BOATMEN'S NATIONAL BANK, Springfield, Missouri, which is named trustee of the Trust in the Trust Agreement dated April 4, 1984, between myself, as Grantor, and BOATMEN'S NATIONAL BANK as trustee, ... such residuary estate to become a part and parcel of the said Trust and to be held, administered and distributed pursuant to the terms thereof.

Such construction will result in funding the family trust in the amount of $325,000 as determined by the trial court and the majority opinion. The remainder of the entire trust estate will be distributed to the wife under paragraph IV of the trust instrument.