In re Amy Veneer NELSON
inter vivos trust.

**Anna Christina STERLING, Successor
Trustee–Appellant,**

v.

**Clarence Eugene HAWKINS, Respondent.**

No. 20460.

Missouri Court of Appeals,
Southern District,
Division One.

July 25, 1996.

Mathew W. Placzek, John R. Courtney, Springfield, for appellant.

Jon A. Kiser, Piedmont, for respondent.

BARNEY, Judge.

Anna Christina Sterling (Appellant), successor trustee of the Amy Veneer Nelson inter vivos trust (Nelson Trust), appeals from an Order of the hearing court construing certain testamentary provisions of the trust.[1]

Included in the Grantor's trust estate were bank checking accounts worth approximately $40,000.00 and insurance annuity contracts worth approximately $400,000.00. Upon the Grantor's demise, the trust instrument directed the successor trustee to distribute all of the trust estate's assets in accordance with Article IV of the trust.

The Appellant contends that the court erred when it determined that the term "bank account" as used in the trust was plain and unambiguous, thereby precluding the use of parol evidence to prove that the Grantor intended to include certain annuity contracts within the definition of the term "bank account."[2] The hearing court then ordered that the annuity contracts in the trust estate be liquidated and distributed to the remainder beneficiaries of the trust.[3]

Article IV of the trust instrument contained the following pertinent language:

Any property remaining in the trust estate at the time of the Grantor's death, shall be disposed of as set forth below:

(a) The trustee shall distribute the following property in-kind:

. . . .

(4) All bank accounts to my Daughter, ANNA CHRISTINA STERLING and my Son, WARREN WILLIAM NELSON, in equal shares, if then living, and, if not, each recipient's share under this provision (4) shall be distributed to their surviving issue by blood in equal shares.

(b) The remaining Trust Estate and any property not effectively disposed of by subparagraphs [sic] (a) shall be liquidated and the proceeds thereof, together with all other amounts of cash in the Trust Estate, shall be distributed as follows:

(1) An amount equal to Thirty (30%) percent of the liquidated remaining trust estate to my Son, WARREN WILLIAM NELSON.

(2) An amount equal to Thirty (30%) percent of the liquidated remaining trust estate to my Son, CLARENCE EUGENE HAWKINS.

(3) An amount equal to Forty (40%) percent of the liquidated remaining trust estate to my Daughter, ANNA CHRISTINA STERLING.

Appellant filed a Petition for Construction of Trust alleging that there were conflicting opinions as to how certain insurance annuity contracts owned by Grantor were to be distributed. Appellant contends that Grantor often referred to the insurance annuity contracts as "bank accounts" and that she intended them to be distributed under Article IV, subparagraph (a)(4) of the trust. Respondent, however, contends that the term "bank accounts" did not include the insur-

1. Amy Veneer Nelson, (Grantor), the Settlor or Grantor of the revocable inter vivos trust, dated August 26, 1991, served as the trustee of the trust until her death on November 27, 1994.

2. This constitutes Appellant's sole point on appeal.

3. The Grantor also executed her last will and testament naming her three children, Warren William Nelson, Anna Christina Sterling and Clarence Eugene Hawkins, as beneficiaries. From our reading of the legal file and transcript it appears that no part of the trust corpus comprises a part of the decedent's estate.

ance annuity contracts and that they should be distributed pursuant to the remainder provision contained in Article IV, subparagraphs (b)(1),(2) and (3) of the trust.

At the hearing the court refused the admission of parol evidence for the purposes of explaining the terms of the trust and the Grantor's intentions relating to the disposition of the trust assets. However, Appellant was allowed to make an offer of proof. The offer of proof consisted of the testimony of two witnesses: David B. Smith, the attorney who drafted the Nelson Trust, and Appellant.

Essentially, the purpose of the testimony of these two witnesses was to establish that Grantor referred to her annuities as accounts and that it was her intent to include the insurance annuity contracts within the term "bank accounts." [4]

The hearing court found that the language used in the Nelson Trust document with respect to the term "bank accounts" was "plain and unambiguous and not reasonably susceptible of different constructions." Specifically, the hearing court found that the term "bank accounts" did not include any insurance annuity contracts included in the assets of the Nelson Trust. The hearing court ordered the insurance annuity contracts liquidated and distributed according to the remainder clause in Article IV, subparagraphs (b)(1), (2), and (3).

■ As this was a court-tried case, this Court will affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or it erroneously applies or declares the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Schupbach v. Schupbach,* 760 S.W.2d 918, 920 (Mo.App.1988); *In re Morrissey,* 684 S.W.2d 876, 878 (Mo.App.1984).

"Missouri courts generally use the same rules for construing both trusts and wills." *Lehr v. Collier,* 909 S.W.2d 717, 723 (Mo.App.

1995); *see also Central Trust Bank v. Stout,* 579 S.W.2d 825, 827 (Mo.App.1979). "The paramount rule of construction in determining the meaning of a trust provision is that the grantor's intent is controlling." *Marvin F. Hall Trust v. Hall,* 810 S.W.2d 710, 713–14 (Mo.App.1991). "In determining the intent of the grantor, we consider the trust instrument as a whole." *Id.* at 714. No clause in the trust instrument is given undue preference. *Id.*

"The mere fact the parties disagree upon the interpretation of a document does not render it ambiguous." *Boatmen's Trust Co. v. Sugden,* 827 S.W.2d 249, 254 (Mo.App. 1992).

■ A testator is presumed to know and intend the legal effect of the language he uses in his will, *First Nat'l Bank v. Hyde,* 363 S.W.2d 647, 653 (Mo.1962), and conceptually this applies to a grantor of an inter vivos trust. *Lehr,* 909 S.W.2d at 723. Words with a well-known technical meaning should be construed according to their technical meaning unless a contrary meaning appears in the granting instrument. *See Central Trust Bank,* 579 S.W.2d at 827. Whether an ambiguity exists in the instant trust estate instrument is a question of law and we are free to make our own determination as to the meaning of the trust instrument. *Lehr,* 909 S.W.2d at 723. "We review declarations of law *de novo.*" *Id.*

"An ambiguity in a will or trust may be either patent or latent." *Schupbach,* 760 S.W.2d at 923. "Moreover, the categorization of an ambiguity as latent or patent is not exact, precise or explicit and the two categories, at times, seemingly overlap." *Breckner v. Prestwood,* 600 S.W.2d 52, 56–7 (Mo.App. 1980).

"A patent ambiguity is one on the face of the instrument, whereas a latent ambiguity occurs where the instrument itself is unam-

---

4. David Smith testified that it was his understanding that Grantor had two favored beneficiaries, Anna Christina Sterling and Warren William Nelson, and one disfavored beneficiary, Clarence Eugene Hawkins. It was Mr. Smith's understanding that the two favored beneficiaries were to receive the bulk of Grantor's estate. Additionally, he stated that he believed "all of the accounts that she had would be divided equally between her two favored beneficiaries." Appellant testified that Grantor always referred to her investments as her "bank accounts" as that is how they had been explained to her when they were purchased and she could write checks on them.

biguous on its face but becomes open to more than one interpretation when applied to the factual situation in issue." *Boatmen's Union Nat'l Bank v. Welton,* 640 S.W.2d 497, 502 (Mo.App.1982); *see also Breckner,* 600 S.W.2d at 55.

■ "If a patent ambiguity is found on the face of the instrument being considered, extrinsic evidence of objective, operative facts concerning events in the testator's life may be introduced in evidence in order to ascertain his exact intent, and to give precise and explicit meaning to the language used in the instrument." *Schupbach,* 760 S.W.2d at 923. Thus where a patent ambiguity exists extrinsic evidence is admissible to show the nature, extent and amount of the testator's bounty and his relationship or association with other persons having an interest in his bounty. *Id.* Additionally, motives actuating the testator and those persons who are the natural objects of his bounty may be shown. *Id.* "This type of evidence does not include evidence of declarations by the testator of his intent; such evidence is generally inadmissible." *Id.*

It is conceded by Appellant, however, that no patent ambiguity exists in the trust instrument. She asseverates that a latent ambiguity exists in the trust instrument because the term "bank accounts" is ambiguous and the court should have permitted extrinsic evidence on its meaning, to show that the Grantor expected her insurance annuity accounts to be included within the definition of the term "bank accounts."

There are, in general, two types of will and trust provisions which present latent ambiguities:

(1) Where the instrument describes a person or thing and more than one person or thing fits exactly the description or condition in the writing;

(2) where no person or thing fits the description or condition but two or more persons or things fit the description or condition in part and imperfectly.

*Welton,* 640 S.W.2d at 502.

■ With reference to latent ambiguities, "extrinsic testimony is admissible solely for the purpose of ascertaining a testator's or grantor's intention from the language actually employed." *Id.* "In cases where a latent ambiguity exists, not only is evidence of surrounding facts and circumstances admissible; but, in addition, testimony regarding declarations made by the testator concerning such matters as the identity of a beneficiary, the identity of ambiguously described property, or to rebut some equity or presumption is also admissible." *Schupbach,* 760 S.W.2d at 923. Nevertheless, such extrinsic evidence "is not admissible to show he meant one thing when he said another or to show an intention not expressed in the will or trust." *Welton,* 640 S.W.2d at 502.

■ The term "bank accounts" as used in the trust instrument herein does not meet any of the requisite criteria to be classified as a latent ambiguity.

First, there were actual bank checking accounts worth $40,000.00 contained in the assets of the trust estate which were distributed pursuant to Article IV, subparagraph (a)(4) of the trust instrument. As it is undisputed that there were actual bank accounts contained in the assets of the trust, it is clear that the term "bank accounts," as used, does not describe a person or thing where more than one person or thing fits exactly the description in the trust.

Secondly, in review of the second criteria, i.e., "where no person or thing fits the description or condition but two or more persons or things fit the description or condition in part and imperfectly," *Welton,* 640 S.W.2d at 502, we determine that the term "insurance annuity contracts" does not fit the description of a "bank account" either in part or imperfectly.

Section 400.4–104, RSMo 1994 defines bank account for Uniform Commercial Code purposes as follows:

Account means any deposit or credit account with a bank, including a demand, time, savings, passbook, share draft, or like account, other than an account evidenced by a certificate of deposit.

Black's Law Dictionary defines Bank Account as follows:

A sum of money placed with a bank or banker, on deposit, by a customer, and subject to be drawn out on the latter's check. The statement or computation of the several sums deposited and those drawn out by the customer on checks, entered on the books of the bank and the depositor's passbook. Any account with a bank, including a checking, time, interest or savings account.

BLACK'S LAW DICTIONARY 144–45 (6th ed.1990).

APPLEMAN, INSURANCE LAW AND PRACTICE § 81 (1981) defines an annuity as "contracts under which the purchaser makes one or more premium payments to the issuer in exchange for a series of payments, which continue either for a fixed period or for the life of the purchaser or a designated beneficiary." *See also Wiegand v. Woerner,* 155 Mo.App. 227, 134 S.W. 596, 605 (1911).

"An annuity contract differs materially from an ordinary life insurance contract in that it is payable during the life of the annuitant rather than upon any future contingency, and in many instances it is paid for in a single payment...." COUCH ON INSURANCE 2D (Rev.ed) § 81.2 (1983); *see also Rosenbloom v. New York Life Ins. Co.,* 65 F.Supp. 692, 695 (W.D.Mo.1946). Annuity contracts have been historically issued by insurance companies. *Acord v. United States,* 532 F.Supp. 22, 24 (E.D.Mo.1981).

We note, also, that the trust includes Article VII, entitled "DEFINITIONS" setting forth definitions for words and phrases. The term "bank account" does not appear in Article VII of the trust. We infer from the absence of a definition for "bank accounts" that the Grantor intended the term to have its plain and ordinary meaning which would exclude insurance annuity contracts.

In *Green v. Lanier,* 61 Tenn.App. 487, 456 S.W.2d 345, 353 (1970), the court held that the term "bank account" within a will in which the testator gave his widow one half of his property, excepting "my bank account," referred to his checking and savings account at his bank but not his savings and loan association accounts.

*Fuqua v. O'Conner,* 753 S.W.2d 95, 96 (Mo.App.1988) involved the construction of a will which contained a provision bequeathing "all of my stocks" to plaintiffs. At the time of her death, the testatrix possessed corporate stock in excess of $220,000.00. However, the testatrix also owned Treasury Bonds, debentures, certificates of deposits and bank accounts worth over $100,000.00. Plaintiff sought to introduce extrinsic evidence to prove by the term "stocks" testatrix meant all of the foregoing items. The Eastern District Court of Appeals held that, "[W]ords used by the testatrix are to be understood in their primary sense unless a different meaning is indicated by the context of the will." *Id.* The court also held that the term "stocks" was not ambiguous and did not also encompass bonds, debentures and other monies sought by plaintiff. *Id.*

The Supreme Court of Missouri held in *Norris v. Norris,* 731 S.W.2d 844, 845 (Mo. banc 1987) that, "[A] testator's intention must be ascertained from the whole will and words with a well-known technical meaning should be construed according to their technical meaning unless a contrary meaning clearly appears from the context of the will." The court went on to conclude that the phrase "tangible personal property" had a clear and definite meaning, admitting of no ambiguity.

The plain and ordinary meaning of the term "bank accounts" does not encompass a description of insurance annuity contracts.[5] The hearing court was correct when it determined that the term "bank accounts" was plain and unambiguous and not reasonably susceptible of different constructions. As

---

**5.** We note that the Nelson Trust was drafted by an attorney.

It is frequently recognized that in ascertaining the meaning of words used in a will, a distinction exists between instruments drawn by skilled testamentary draftsmen and those prepared by persons obviously unlearned in the law; words found in documents of the first kind are to be construed with some strictness, with an emphasis being placed upon their accepted technical meaning, while the language exhibited in wills of the other sort is to be interpreted liberally with reference to its popular meaning.

80 AM.JUR 2D *Wills* § 1157 (1975).

such, we cannot say that the hearing court misapplied the law in refusing to distribute the insurance annuity contracts as "bank accounts" under Article IV, subparagraph (a)(4) of the Nelson Trust.

The judgment of the hearing court is affirmed.

MONTGOMERY, P.J., and GARRISON, JJ., concur.