190 S.W.3d 469 (2006)
In re the Living Trust of Betty Jane JOHNSON.
Ozark Mountain Bank, Trustee,
v.
Bruce Johnson and Donna Johnson, Respondents, and
Barbara Teachout, Zayna Cline, David Cutter, Deborah Cutter, and Beverly Cutter-Earley, Appellants.
No. 26768.
Missouri Court of Appeals, Southern District, Division One.
March 29, 2006.
Motion for Rehearing or Transfer Denied April 20, 2006.
Application for Transfer Denied May 30, 2006.
*471 Gary E. Bishop, Mann, Walter, Bishop & Sherman, P.C., Springfield, for appellant.
C. Matthew Towns, Lowther Johnson, LLC, Springfield, for respondent.
Motion for Rehearing or Transfer to Supreme Court Denied April 20, 2006.
JOHN E. PARRISH, Judge.
Barbara Teachout, Zayna Cline, David Cutter, Deborah Cutter, and Beverly Cutter-Earley (appellants) appeal a judgment reforming the Revocable Living Trust Agreement of Betty Jane Johnson (the revocable trust). Appellants contend the trial court erred in reforming the revocable trust to exclude any limitation of the power of appointment granted Norman M. Johnson. This court reverses and remands with directions.
The judgment that is the subject of this appeal recites the following:
The following facts, as revealed by counsel and the evidence, are undisputed:
A. On November 2, 1996, Betty Jane Johnson was suffering from terminal cancer.
B. At all times relevant and up to and until the time of her death, Betty Jane Johnson was married to Dr. Norman Johnson.
C. That near the end of October or the first of November, 1996, Clancy Parks, an attorney with offices in Springfield, Missouri, with the assistance of Dr. Norman Johnson, prepared the Revocable Living Trust which is at issue herein.
D. The trust was executed on November 2, 1996, at the home of Betty Jane Johnson at approximately 7:00 p.m.
E. Betty Jane Johnson had not seen the trust prior to that evening when Clancy Parks delivered it to her home.
F. Clancy Parks testified he reviewed the 14-page document with her before she executed it.
G. As of November 2, 1996, Betty Jane Johnson had never given birth to a child, nor had she ever adopted any children.
H. Betty Jane Johnson died on November 12, 1996.
I. Bruce Johnson was the son of Dr. Norman Johnson by a prior marriage, and was not related to Betty Jane Johnson.
J. The trust granted Dr. Norman Johnson the power of appointment as follows:

*472 ARTICLE FOUR

The Trustee shall, if my spouse survives me, hold, administer and dispose of the pecuniary sum transferred to it pursuant to Paragraph 3.01 of ARTICLE THREE hereof upon the trusts, terms and provisions hereinafter expressed and which shall be known as the BETTY J. JOHNSON CREDIT SHELTER TRUST.
4.01 The Trustee shall pay the net income derived from the BETTY J. JOHNSON CREDIT SHELTER TRUST (no less frequently than quarterly) to my spouse, NORMAN M. JOHNSON, commencing at the date of my death and continuing during the life of my spouse.
The Trustee, in its sole discretion, is authorized to pay to my spouse out of the principal of the BETTY J. JOHNSON CREDIT SHELTER TRUST such sums, from time to time, as may be necessary or advisable for the support in reasonable comfort, health and maintenance of my spouse. Payments out of principal of the BETTY J. JOHNSON CREDIT SHELTER TRUST for the benefit of my spouse shall be made with consideration given to the assets in the name of my spouse as an individual and in any trust under the same name.
4.02 Notwithstanding any other provision of this instrument, upon the death of my spouse, all income of the BETTY J. JOHNSON CREDIT SHELTER TRUST which is accrued or undistributed at my spouse's death shall be paid to the estate of my spouse.
4.03 Upon the death of my spouse after my death, the Trustee shall dispose of the then remaining balance of the BETTY J. JOHNSON CREDIT SHELTER TRUST to, or in trust for the benefit of, such person(s) among my descendants, or who at any time were married to a descendant of mine, upon such conditions and estates, with such powers, in such a manner and in such proportions and at such time or times as my spouse appoints and directs by Will, specifically referring to this limited power of appointment. To the extent that my spouse does not fully and/or effectively exercise the foregoing limited power of appointment, the Trustee shall, upon the death of the survivor of my spouse and me, hold, administer and dispose of the then remaining balance of the BETTY J. JOHNSON CREDIT SHELTER TRUST, which is not so appointed, shall be distributed free and clear of trust as follows after paying the necessary expenses incurred in the management and investment of the trust estate, including the compensation of the Trustee for its own services:
(i) An amount equal to thirty-three and one-third percent (33 1/3%) to Grantor's brother, DICK CUTTER, if living, otherwise to his lineal descendants, per stirpes.
(ii) An amount equal to thirty-three and one-third percent (33 1/3%) to Grantor's sister, BARBARA TEACH-OUT, if living, otherwise to her lineal descendants, per stirpes.
(iii) An amount equal to thirty-three and one-third percent (33 1/3%) to the lineal descendants of GRANTOR'S deceased brother, MORRIS CUTTER, per stirpes.
Norman M. Johnson, surviving spouse of Betty J. Johnson, died December 31, 2002. His will included the following provision, entitled "EXERCISE OF POWER OF APPOINTMENT."
I hereby exercise my power of appointment over all of the property over which I have been granted a power of appointment pursuant to Subparagraph 4.03 of Article 4 of that certain trust *473 agreement entitled "Revocable Living Trust Agreement of Betty Jane Johnson" dated November 2, 1996. Said property shall be disposed of by transferring said property ("the gift amount") to a Deferred Gift Annuity for the benefit of my son, Bruce N. Johnson, and my daughter-in-law, Donna Johnson, governed as follows:
Upon my death, my Personal Representative shall distribute the gift amount, which is the property governed under the aforementioned power of appointment, to the following institutions, in the following percentages, and in conjunction with the following conditions:
40% of the gift amount to the unrestricted endowment fund for The Washington University School of Medicine at St. Louis, Missouri; 20% of the gift amount to the Branson United Methodist Church, Branson, Missouri; 20% of the gift amount to the American Cancer Society; and 20% of the gift amount to the American Heart Association, (hereinafter the "Institutions"), provided the Institutions shall, in the aggregate based upon the percentage of the whole amount of the total gift amount, pay an annuity to Grantor's son, Bruce N. Johnson of Kimberling City, Missouri an annual amount of Thirty Thousand Dollars ($30,000.00) (hereinafter the "annuity payment") per year in calendar quarterly installments to begin on the first day of the calendar quarter immediately following Testator's death. Said annuity payments shall continue after the death of Testator's son, Bruce N. Johnson, for the remainder of the life of Donna Johnson, my son's spouse so long as Donna Johnson or her representative can furnish proof of a valid and legal marriage existing between she and Testator's son at the time of Testator's death (proof of such marriage will be sufficient if Donna Johnson or her representative can furnish an original or sufficient copy of a valid Certificate of Marriage dated prior to the date of death of the Testator.) In the event proof of a valid marriage is not established within 60 days after the death of Testator's son, Bruce N. Johnson, then said annuity payments shall cease.
It is the Testator's express intent for the annuity payment to remain at Thirty Thousand Dollars ($30,000.00) per year unless such an annuity payment would result in the Institutions having to pay an annuity rate greater than its current annuity rate, at the time of the Testator's death. Upon such an occurrence the Tesatator [sic] stipulates, that the gift amount shall have an annuity rate applied equal to the highest rate then being paid by the Institutions to annuitants based upon the above terms and conditions.
If Testator's son, Bruce N. Johnson, shall not be alive at the time of Testator's death, then the above gift amount shall still be made in accordance with all of the above terms and conditions except that upon the proof of a valid marriage to Testator's son, Donna Johnson shall be paid the aforementioned annuity payment until her death, assuming she can prove she was at one time legally married to Bruce N. Johnson.
In the event neither Bruce N. Johnson nor Donna Johnson is alive at the time of Testator's death, then the amount under this section will lapse and pass under Item III of this instrument.[1]

*474 Testator specifically requests, but does not make the terms of this deferred gift annuity contingent upon, a plaque bearing the Testator's name and date of graduation from the University of Washington Medical School be placed in a place of recognition in the School of Medicine in order to commemorate the Testator's gift under this provision.
The trial court entered the following findings and judgment:
The Court finds that the trust contained an ambiguity considering the provisions of the trust and the fact that Betty had no descendants.
It is apparent that Betty wanted her husband to have a power of appointment over her trust. If her siblings were the intended primary beneficiaries of her trust, then the power of appointment was unnecessary, and she could have left them the trust proceeds without designating a power of appointment.
The Court finds that the trust contains an ambiguity that should be reformed. It is therefore ORDERED that the trust is reformed, and that the power of appointment to Dr. Norman Johnson is not limited to Betty Jane Johnson's descendants.
Although this decision is not based upon the testimony of Clancy Parks or the actions of Norman Johnson, the Court does note that Dr. Norman Johnson executed his Last Will and Testament as a result of updating his estate plan, and it is evident he believed he had a power of appointment. Betty Jane Johnson's attorney, Clancy Parks, also believed that she wanted Dr. Johnson to be able to appoint for the benefit of his son, Bruce Johnson.
It is therefore ORDERED that the Revocable Living Trust of Betty Jane Johnson is reformed, and the power of appointment granted to her husband, Dr. Norman Johnson, is not limited to Betty Jane Johnson's descendants.
Point I complains that the trial court's judgment reforming the revocable trust to provide that the limited power of appointment contained in part 4.03 of Article Four was not restricted to descendants of Betty Jane Johnson "erroneously declared and/or erroneously applied the law in that the terms of said trust . . . are not ambiguous and, therefore, could not properly be reformed on the ground of mistake or otherwise."[2]
Missouri courts use the same rules for construing both wills and trusts. Mercantile Trust Co., N.A. v. Hardie, 39 *475 S.W.3d 907, 910 (Mo.App.2001). Thus, rules of construction announced in cases involving wills, unless applicable to circumstances peculiar to the will that is construed or peculiar to a particular testator, apply with equal force in interpreting trusts. Id. See Theodore Short Trust v. Fuller, 7 S.W.3d 482, 488 (Mo.App.1999).
"In determining the meaning of a trust provision, the paramount rule of construction is that the settlor's intent is controlling and such intention must be ascertained primarily from the trust instrument as a whole." First Nat'l Bank of Kansas City v. Hyde, 363 S.W.2d 647, 652 (Mo.1962). "It must be remembered that courts must decide the meaning of a testator by what he said in his will, and not by attempting `to guess what he meant or what he might have done under certain conditions if not expressed in his will.'" Brock v. Dorman, 339 Mo. 611, 98 S.W.2d 672, 675 (1936) (quoting St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S.W.2d 685, 687 (banc 1934)). Thus a testator's intent "must be determined by what the will actually says and not by what we might imagine the testator intended to say or would have said if he had decided to further explain his intention." Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947, 949 (1934).
Commerce Bank, N.A. v. Blasdel, 141 S.W.3d 434, 443 (Mo.App.2004).
"[A]bsent any ambiguity in the terms of a legal instrument, the intent of its maker, including the intent of a testator or the settlor of a testamentary or inter vivos trust, is to be ascertained from the four corners of the instrument without resort to parol evidence as to that intent." Id. at 444. "`[T]he intentions of the testator must be gleaned from the written unambiguous will, not from what the testator or the will's scrivener, after execution of the instrument, contrarily declared, either orally or in writing, to be testator's intentions or the meaning of provisions in the will.'" Id., quoting In re Estate of Welter, 598 S.W.2d 618, 619 (Mo.App.1980). Courts will not rewrite an instrument under the guise of construction. Id. "The function of the court is to construe the will [or trust] as written by the testator [or settlor] and not to make or rewrite one for the testator [or settlor] under the guise of construction." First Nat'l Bank of Kansas City v. Danforth, 523 S.W.2d 808, 816(Mo.), cert. denied, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483 (1975). The province of the court is to ascertain from the instrument what was meant by the words actually used. Commerce Bank v. Blasdel, supra, at 444.
The first question for determination is whether the revocable trust was ambiguous. "`Ambiguity' means `duplicity, indistinctness or uncertainty of meaning of an expression used in a written instrument.'" Lehr v. Collier, 909 S.W.2d 717, 721 (Mo.App.1995), quoting Schupbach v. Schupbach, 760 S.W.2d 918, 923 (Mo.App.1988). See also Tenney v. American Life & Acc. Ins. Co., 338 S.W.2d 370, 371 (Mo.App.1960); Peters v. Briska, 191 S.W.2d 993, 996 (Mo.App.1946). Lehr explains:
An ambiguity in a trust instrument may be either patent or latent. Schupbach, 760 S.W.2d at 923. "A patent ambiguity is one on the face of the instrument, whereas a latent ambiguity occurs where the instrument itself is unambiguous on its face but becomes open to more than one interpretation when applied to the factual situation in issue." Boatmen's Union National Bank v. Welton, 640 S.W.2d 497, 502[3] (Mo.App.1982).
Lehr, supra.
The pertinent part of subparagraph 4.03 of the revocable trust granted *476 Dr. Johnson power to dispose of assets that passed to the Betty J. Johnson Credit Shelter Trust (the Shelter Trust) at her death. The revocable trust declared that, upon the death of Dr. Johnson, the trustee of the Shelter Trust was to dispose of the remaining balance of the Shelter Trust "to, or in trust for the benefit of, such person(s) among [Betty J. Johnson's] descendants, or who at any time were married to a descendant of [hers], upon such conditions and estates, with such powers, in such a manner and in such proportions and at such time or times as [Dr. Johnson] appoints and directs by Will, specifically referring to this limited power of appointment."[3]
Dr. Johnson's will purported to exercise the power granted by the revocable trust by directing that the proceeds of the Shelter Trust be transferred to a "Deferred Gift Annuity" for the benefit of his son (Mrs. Johnson's stepson), Bruce N. Johnson, and Bruce N. Johnson's wife, Donna Johnson. Dr. Johnson's will undertook to establish the "Deferred Gift Annuity" by directing that the proceeds of the Shelter Trust be distributed in the proportions designated by his will to four charitable organizations, the Washington University School of Medicine, the Branson United Methodist Church, the American Cancer Society, and the American Heart Association. The will directed those organizations to pay the cumulative sum of $30,000 annually "in calendar quarterly installments" to Bruce N. Johnson. The will directed that the payments would continue to Donna Johnson after the death of Bruce N. Johnson, if she survived, upon her proving that "a valid and legal marriage" existed between her and Bruce N. Johnson at the time of Dr. Johnson's death.
Appellants argue that the terms of the revocable trust applicable to the power granted Dr. Johnson are unambiguous; that Dr. Johnson could only direct distribution of the Shelter Trust proceeds to descendants of Betty J. Johnson; that he did not do this in that Bruce N. Johnson was not a descendant of Mrs. Johnson.
The language of the revocable trust does not evoke a question of who the settlor intended as beneficiaries. Thus, the language is not patently ambiguous. Further, mindful that the types of provisions in a trust that give rise to a latent ambiguity are (1) a provision that describes a person or a thing and more than one person or thing fits the description exactly, and (2) a provision that describes a person or a thing and no person or thing fits the description, but two or more persons or things fit the description in part and imperfectly, there is no latent ambiguity. See In re Nelson, 926 S.W.2d 707, 710 (Mo.App.1996). The trial court erred in holding the trust contained an ambiguity and, therefore, erroneously applied the law in reforming the trust on the basis that it was ambiguous. Point I is well taken.
Appellants assert three other points on appeal. Each of the points is deficient in that they do not comply with requirements of Rule 84.04. See n. 2, supra. As best this court can discern, all three of the remaining points are directed to the same *477 issues, directly or indirectly, addressed in determining Point I. Point II appears to complain that the reformation of the revocable trust results in Dr. Johnson having been permitted to exercise authority that exceeded the limited power recited in subparagraph 4.03 of Article Four of the trust. Point III complains that the trial court permitted extrinsic evidence to be admittedsomething not permitted for purposes of interpreting a legal instrument absent an ambiguity in the instrument. Point IV complains that the trial court's actions were not supported by competent evidence or were against the weight of the evidence, albeit that Point IV neither identifies the error about which it complains, see Rule 84.04(d)(1)(A), or explains, in the context of the case, what supports its conclusion that the standard of proof was not met, see Rule 84.04(d)(1)(C).
Since the error asserted in Point I requires reversal and remand for further proceedings, further discussion of appellants' remaining points on appeal would serve no purpose. Even if their deficiencies with respect to requirements of Rule 84.04(d) would not impede disposition of the issues they attempt to raise on the merits, Points II, III and IV, by reason of the determination of Point I, are moot.
Because this case must be remanded for further proceedings, it is appropriate to note that the petition on which the case was tried requests findings regarding:
A. Determining whether or not Bruce Johnson is a descendant of Betty Jane Johnson;
B. If Bruce Johnson is a descendant of Betty Jane Johnson, determining whether or not Donna Johnson was at any time married to Bruce Johnson;
C. If Bruce Johnson is not a descendant of Betty Jane Johnson, determining who is entitled to receive the remainder of the assets in the Revocable Living Trust Agreement of Betty Jane Johnson dated November 2, 1996;

. . .
Implicit in determining those issues, if the case proceeds without amendment of the petition on which it was previously tried, is the question of whether Dr. Johnson "fully and/or effectively exercise[d] the . . . limited power of appointment" granted by the revocable trust. The judgment that was appealed did not determine those issues.
The petition on which this case was tried sought a judgment declaring the meaning of the trust document, i.e., it sought a ruling construing the revocable trust. The petition did not seek reformation of the revocable trust. The relief a court gives is based on the remedy sought by the petition that vests the court with authority to act. "The nature of a civil cause of action is determined from the allegations in the petition." Curnes v. Equitable Life Assurance Soc., 6 S.W.3d 175, 177 (Mo.App.1999).
The judgment is reversed. The case is remanded for further proceedings and entry of judgment construing the revocable trust. The trial court shall have authority to enter judgment on the basis of the record heretofore made, or, in its sound discretion, to receive additional evidence, or to conduct a new trial.
RAHMEYER, P.J., concurs.
McGHEE, Sr. J., concurs in part and dissents in part in separate opinion.

OPINION CONCURRING IN PART AND DISSENTING IN PART
PAUL McGHEE, Senior Judge.
I dissent in part and concur in the remand of the case. Ten days before Mrs. Betty Jane Johnson died from cancer, she *478 executed her Revocable Living Trust Agreement. In subparagraph 4.03 of the trust, she directed the trustee to dispose of the remaining balance of the trust after her death and the death of her husband, Dr. Norman Johnson:
. . . to, or in trust for the benefit of, such person(s) among my descendants, or who at any time were married to a descendant of mine, upon such conditions and estates, with such powers, in such a manner and in such proportions and at such time or times as my spouse appoints and directs by Will, specifically referring to this limited power of appointment.
She further directed in subparagraph 4.03 that if her husband did not "fully and/or effectively" exercise the power of appointment, the trustee should distribute the remaining trust property, free and clear of the trust, in one-third shares, to her surviving sister, Barbara Teachout; to the lineal descendant of her deceased brother, Dick Cutter; and to the lineal descendants of her deceased brother, Maurice Cutter.
Dr. Johnson exercised the power of appointment in his will by directing that the trust property be disposed of by transferring the property for the benefit of his son and his son's wife, a medical school, a church, and two charities. Because of disclaimers by the medical school, the church, and both charities, a valid exercise of the power by Dr. Johnson presumably would result in respondents becoming the sole beneficiaries of the trust, to the exclusion of appellants. However, the judgment is silent as to the identity of the ultimate recipients of the trust property.
Mrs. Johnson never had descendants, and it is obvious that she did not anticipate having descendants in the future. The trial court found that "the trust contained an ambiguity considering the provisions of the trust and the fact that Betty had no descendants." It then entered judgment declaring "that the Revocable Living Trust of Betty Jane Johnson is reformed, and the power of appointment granted to her husband, Dr. Norman Johnson, is not limited to Betty Jane Johnson's descendants."
"`Ambiguity' means `duplicity, indistinctness or uncertainty of meaning of an expression used in a written instrument.'" Schupbach [v. Schupbach], 760 S.W.2d [918], 932[2] [(Mo.App.1988)]. A trust instrument is ambiguous if its provisions, when taken together, evoke a question as to who the real parties and beneficiaries are. See In re Estate of Lamy, 679 S.W.2d 288, 290[2] (Mo. banc 1984).
An ambiguity in a trust instrument may be either patent or latent. Schupbach, 760 S.W.2d at 923. "A patent ambiguity is one on the face of the instrument, whereas a latent ambiguity occurs where the instrument itself is unambiguous on this face but becomes open to more than one interpretation when applied to the factual situation in issue." Boatmen's Union National Bank v. Welton, 640 S.W.2d 497, 502[3] (Mo.App.1982).
Lehr v. Collier, 909 S.W.2d 717, 721 (Mo. App.1995).
It is undisputed that there is no patent ambiguity in the trust provision at issue, and appellants correctly state that the central issue is whether there is a latent ambiguity in subparagraph 4.03. It is also undisputed that if there is a latent ambiguity, then extrinsic evidence may be introduced to explain the ambiguity.
There are, in general, two types of will and trust provisions which present latent ambiguities:
(1) Where the instrument describes a person or thing and more than one *479 person of thing fits exactly the description or condition in the writing;
(2) [W]here no person or thing fits the description or condition but two or more persons or things fit the description or condition in part and imperfectly.

[Boatmen's Union National Bank v.] Welton, 640 S.W.2d [497] at 502 [(Mo. App.1982)].
With reference to latent ambiguities, "extrinsic testimony is admissible solely for the purpose of ascertaining a testator's or grantor's intention from the language actually employed." Id. "In cases where a latent ambiguity exists, not only is evidence of surrounding facts and circumstances admissible, but, in addition, testimony regarding declarations made by the testator concerning such matters as the identity of a beneficiary, the identity or ambiguously described property, or to rebut some equity or presumption is also admissible." Schupbach, 760 S.W.2d at 923. Nevertheless, such extrinsic evidence "is not admissible to show he meant one thing when he said another or to show an intention not expressed in the will or trust." Welton, 640 S.W.2d at 502.
In re Nelson, 926 S.W.2d 707, 710(Mo.App.1996).
The Johnson trust provision is not included within the foregoing general types of trust provisions, but neither is it excluded. The parties have not cited a case precisely in point, and the issue of the existence of a latent ambiguity in the language of subparagraph 4.03, when applied to the factual situation at the time the trust was executed, appears to be a matter of first impression. In the absence of controlling precedent, I conclude that there is a latent ambiguity in the facially-valid grant of the power of appointment to Dr. Johnson which he could never exercise, if the language of the grant were literally applied.
I would hold that the trial court can properly consider extrinsic evidence of the facts and circumstances surrounding the execution of the trust, and the declarations made by Mrs. Johnson. After coming to that conclusion, I would affirm the declaration of the trial court that the power of appointment is not limited to descendants of Mrs. Johnson.
I would remand the case for the trial court to proceed as authorized by the principal opinion, and then enter judgment declaring to whom the trustee should distribute the remaining trust property.
NOTES
[1] Item III of the Last Will and Testament of Norman M. Johnson was a residuary clause that bequeathed property to the trustee of "that certain Restatement of Self-Declaration of Trust of Norman M. Johnson" executed by him on the 22nd day of April, 1998. It directed that the sum so bequeathed "be added to the principal of said Trust and held, administered and disposed of in accordance with the terms and conditions of said Trust and any amendments thereto or modifications thereof, if any, made subsequent to [the] Last Will and Testament."
[2] Point I is not in compliance with Rule 84.04(d)(1)(A) in that it does not identify the trial court ruling or action that appellants are challenging. Applying the rule strictly, this court would be warranted in dismissing the point. See Patterson v. Waterman, 96 S.W.3d 177, 178 (Mo.App.2003). The remainder of Point I and the argument in support of it make evident that the alleged error is entry of judgment reforming the trust. For that reason, the procedural violation with respect to Point I does not impede disposition of the point on its merits which appellate courts prefer to do. See Twelve Oaks Motor Inn, Inc. v. Strahan, 110 S.W.3d 404, 407 n. 3 (Mo. App.2003).
[3] As previously noted, the revocable trust provided, in the event Dr. Johnson did not exercise the power granted him, that the trustee of the Shelter Trust, upon Dr. Johnson's death, was to distribute the trust proceeds, after payment of certain expenses, to Mrs. Johnson's three siblings or their lineal descendants. Appellants in this case are the sole surviving sibling of Mrs. Johnson, her twin sister, Barbara Teachout; Mrs. Johnson's niece, Zayna Cline, the only child of grantor's deceased brother, Richard "Dick" Cutter; and David Cutter, Beverly Cutter-Earley, and Deborah Cutter, Mrs. Johnson's nieces and nephews who are the only children of Mrs. Johnson's deceased brother, Maurice "Morris" Cutter.